## Breinig *versus* Breinig.

Where on the traverse of a libel for divorce, which contains a general allegation of cruel and barbarous treatment, if the respondent goes to trial without having demanded a specification of the particular acts relied on to sustain it, he will be presumed to have waived such notice.

Whether certain ambiguous words proved to have been uttered by the respondent involved a threat of personal injury, was a question to be determined by the jury.

Words and acts not implying any such threats were properly submitted, to show the terms on which the parties lived.

Breinig *v.* Meitzler, 11 *Harris* 156, affirmed.

The record of a surety of the peace by the wife against her husband, which was dismissed by the court, was not evidence against her on the trial of the divorce.

The amount of alimony is a question for the discretion of the court which pronounces the decree, and is not subject to review in this court.

It is the uniform practice to allow a wife destitute of a separate estate, who is either suing or defending a divorce, such reasonable sum as will enable her to carry it on.

The husband has not an absolute right to annul a decree for alimony, by the mere presentation of his petition agreeing to receive and cohabit with his wife.

The court may annul or suspend the sentence in a proper case, but are not bound to do so in every case. It is by the words of the act left to the discretion of the court.

APPEAL from the decree of the Common Pleas of *Northampton county.*

This was a libel for a divorce, *a mensa et thora*, and alimony, filed by Catharine Breinig, by her next friend, against George Breinig, her husband. The parties were married the 13th June, 1846. Both parties had been previously married, and each of them had children.

The petition of the libellant set forth, as the cause for the application, "that he had not only refused to cohabit with her, but had offered such indignities to her person as to render her condition intolerable, and life burdensome, and by cruel and barbarous

[Breinig *v.* Breinig.]

treatment endangered her life, and thereby forced her to withdraw from his house and family, and prayed a decree for a divorce from his bed and board, and the allowance of alimony."

The answer of the respondent denied all the allegations in the petition, and averred that the libellant had left his habitation without any just or reasonable cause, and averred his readiness to verify the same.

To this answer there was a general replication, and prayer that a jury might be called to inquire thereof, according to the Act of Assembly.

On the 31st of August, 1850, a jury was called, and

On the trial evidence was offered of particular acts and instances of cruel treatment, to which the respondent objected, as the libel was general in its terms, and no specification was furnished previous to the trial, which objections were overruled by the court, and the evidence admitted.

The evidence of the libellant proved that for a considerable time before she entirely separated herself from her husband, she occupied a separate house from that of himself and family, upon his premises, and that there was no intercourse between the parties, except when she partook of her meals at the table of the family, to which she was called by the ringing of a bell. And also that the daughters of the respondent applied offensive and degrading epithets to libellant in the presence of her husband, without being reproved or restrained by him. That she was not permitted to have any concern with or control over the household affairs of her husband, but was compelled to live in a separate house, where she was never visited by himself or any of his family. The evidence also showed that a short time before she left finally, the respondent said, in reference to the disputes between himself and his wife, " that in six weeks a thunderstorm must rise and strike one of them—the one in fault in this strife."

The respondent offered in evidence the record of a complaint by libellant against him for surety of the peace, and the dismissal of the same by the court, at the costs of the prosecutrix, which offer was overruled by the court, and the evidence rejected, and which was specified for error here.

His Honour (JONES, P. J.) charged the jury as follows :—

"No light causes justify a woman in leaving her husband. Petulance of temper, brutality of language and manner, indecency, meanness, and all kindred defects of mind and disposition may concur in him, and render him as much of a beast as is at all consistent with his retaining the character of a man—yet having unhappily made such a choice, a woman must abide by it. The situation of a woman so wedded is to be deplored, certainly ; but the law considers it better that she should suffer than that such causes should be allowed to unrivet the chains of matrimony.

[Breinig v. Breinig.]

The conjugal relations of these parties, clearly, were not agreeable.

."Among the reasonable causes 'which the law recognises as affording a woman justification in leaving her husband, and seeking legal separation from his bed and board, or, if she so pleases, from the bonds of marriage, is such cruel and barbarous treatment as endangers her life, or the offer of such indignities to her person as to render her condition intolerable, and life burdensome. Cruelty is not susceptible of a precise legal definition. It is enough for the purposes of this case to say that it may consist in threat of bodily harm itself. No woman is required to suffer violence to her person—its infliction, however slight, is a cruelty, which would warrant her in appealing to the tribunals for divorce of either kind from a husband so recreant to`honour and manhood. Such violence, proceeding to the length of an assault and battery, however trivial, is legal cruelty. Much more would any attempt to inflict upon her grievous bodily injury, or to assail her life, be such. And so a threat of anything of the kind is such cruelty, provided the threat is uttered in such a temper and spirit as might create a reasonable and apparently well-grounded fear of its being carried into execution, upon a mind of ordinary firmness. Threats to amount to cruelty must be so qualified. Now, were there any threats of this kind offered by Mr. Breinig towards his wife? What was the meaning of those expressions about a thunderstorm, uttered as well before her face as behind her back? Were the expressions used the mere utterance of momentary anger, or did they convey such a threat as has been described? If they were the offspring of mere heat and passion, they would amount to nothing; if they contained such a threat as would strike a constant mind with fear of some hidden purpose of deadly revenge, they would be such legal cruelty as I have mentioned. What those words were you have heard, and what their force and meaning, as uttered by Mr. Breinig in reference to his wife, it is for you to say."

The jury found for the libellant. A motion was made for a new trial, which was overruled, and a decree of divorce a mensa et thoro entered, with $300, to defray the expenses of prosecuting the suit, and $300 per annum for the alimony, payable quarterly.

On the 21st of November, 1851, being the same day the decree was entered, the petition and offer of the respondent was presented to the court, offering to receive and cohabit with the said libellant, but the court declined to take any action upon it, or to disturb the decree.

George Breinig, the respondent below, appealed from this decree.

Stiles, Porter, and Goepp, for appellant.

Brown and Green, contrà.

164          . SUPREME COURT          [*Philadelphia*

[Breinig *v.* Breinig.]

- The opinion of the court was delivered by

Black, J.—This was a libel for divorce, brought by a wife against her husband, and grounded on the allegation of cruel and barbarous treatment. It was tried by a jury, and resulted in a decree in favour of the libellant. The respondent has taken this writ of error.

We shall not discuss the points *seriatim*, as they were argued by the counsel. It will be more convenient to consider them in a different order, and reduce their number by rolling several into one.

1. The court permitted evidence to be given of particular acts done and words spoken by the respondent, although he had no notice to meet them other than the general allegations of the libel. He might have entitled himself to a more specific notice by demanding it. But when he went to trial without doing so, he must be presumed to have waived notice. If he had been really surprised at the trial, an affidavit to that effect would have got him a continuance. But the same subject had been investigated before, and he probably knew every inch of the ground he had to go over. His objection to the want of a specification is merely technical, and, tried by the technical standard, there is nothing in it.

2. At least five of the exceptions are based on a supposed deficiency of the evidence to prove such acts or threats of cruelty as would justify a divorce. We had the same question before us in Breinig *v.* Meitzler, (11 *Harris* 156,) upon the same evidence. We held then, what we now again declare to be our opinion, that the evidence was proper to be received and submitted to the jury, so that they might determine whether it involved a threat or not. Those acts and words which did of themselves imply no intention to inflict personal injury were properly received as showing the terms on which the parties lived.

3. The respondent was not permitted to show that his wife had once made an unsuccessful effort to have him bound over to keep the peace. This record was rightly rejected : she was not a party to it in any sense that would make it binding on her. Nor does it appear to have any relation to the subject-matter of the present dispute. No copy of it is produced, and the bill of exceptions does not show whether the complaint was made one year or seven years before the separation of the parties. The respondent's counsel think it should have been admitted because it is alleged in his answer and denied in the replication. But neither the answer nor the replication is in the paper-book ; and we cannot put our decision of a cause on the pleadings without seeing them.

4. It is argued that the court ought not to have allowed the libellant so much alimony, nor anything at all for her expenses. If there was error in this, we have no authority to correct it. There is nothing on this record by which we can know whether

[Breinig *v.* Breinig.]

the alimony was too much or too little. We are bound for this reason, if for no other, to presume that the judges who had all the facts before them decided the matter rightly. It has been the uniform practice to allow a wife destitute of a separate estate, who is either suing or defending a case of divorce, such reasonable sum as will enable her to carry it on. She cannot sue *in forma pauperis*, for she is not a pauper if she is the wife of a man who has property. To deny her the means of paying for process and professional aid is to deny her justice. The amount is a question for the discretion of the court.

5. As soon as the sentence was pronounced the respondent presented a petition, asking for a suspension of it and offering to take his wife back. The prayer was refused. The law favours the reconciliation of parties who are divorced *a mensa et thoro.* When both are willing to try over again the enjoyment of living together, the sentence will be suspended or annulled without hesitation. Where the husband desires to do his duty and the wife unreasonably refuses to join him, she ought to be punished for her obstinacy by the withdrawal of her separate support. But it is not true that the husband has an absolute right to annul the whole proceeding whenever he pleases, by the mere act of presenting a petition. He cannot force his wife back again under the roof from which she was obliged to fly, and into the power that abused her before, by the simple expression of his own will. The court *may* annul or suspend the sentence in a *proper* case, but they are not bound to do so in *every* case. It is left to their discretion by the very words of the statute.

Judgment affirmed.