## APPEAL OF MARGARET A. POWERS.

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF CRAWFORD COUNTY.

Argued April 26, 1888—Decided May 7, 1888.

The libel of a husband for a divorce from his wife, charged (*a*) wilful and malicious desertion, and (*b*), that the respondent had "offered such indignities to the person of your petitioner as to render his condition intolerable and his life burdensome, and thereby forced him to withdraw from his home and family." On an appeal from decrees refusing temporary alimony and counsel fees to the wife, and granting to the husband a divorce, *Held*:

1. That, as the wife had not left her home but had continued to reside in it until the date of the decree, desertion on her part was not established.
2. That no statute authorized a divorce at the suit of the husband for "such indignities to his person as to render his condition intolerable and life burdensome."

---

Statement of Facts.

3. That an amendment averring cruel and barbarous treatment by the wife rendering the condition of the husband intolerable and life burdensome, would make a change in the cause of action, and, therefore, would not be allowed in this court.

4. That, the evidence showing the libellant to be the owner of lands, farms, mills and houses, and engaged in business, it was a palpable abuse of discretion to refuse the respondent alimony pendente lite and counsel fees.

5. Wherefore, the libel was dismissed at the costs of the libellant and an order made for the payment by the libellant of $500 for counsel fees and expenses, to be enforced by the court below.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 153 January Term 1888, Sup. Ct.; court below, No. 94 February Term 1887, C. P.

To the number and term of the court below Patrick H. Powers filed his petition and libel praying a divorce from his wife Margaret Amelia Powers, representing:

That on April 10, 1866, a marriage was contracted and celebrated between the libellant and Margaret Amelia Powers, the respondent, and although . . . . . yet so it is, that the said Margaret Amelia Powers in violation of said laws and her vows aforesaid has wilfully and maliciously deserted the libellant and absented herself from his habitation without reasonable cause for more than two years last past. And the libellant for a further and different cause of divorce says, that the said Margaret Amelia Powers, in violation of said laws and her vows aforesaid, has offered such indignities to the person of your petitioner as to render his condition intolerable and his life burdensome, and thereby forced him to withdraw from his house and family. Wherefore, etc.

The answer of the respondent admitted the marriage, denied all the charges of the libel, and averred:

1. That while she in all respects demeaned herself as a wife should do towards her husband, yet the said Patrick H. Powers did for a number of years prior to his desertion of her, treat her in a cruel and barbarous manner, and use indignities toward her, and did strike and physically abuse her at different times, and continued his ill-treatment up to the time he left her and his home.

VOL. CXX—21

2. That in January, 1874, the said Patrick H. Powers did wilfully and maliciously and without any just cause, desert her, and leave his house, declaring that he would not live with her any longer.

3. That afterwards he refused to live with respondent, and removed his goods and effects from their joint domicil, and lived separately and apart from her, but from 1874 to 1881, did annoy and ill-treat respondent by remaining away from his house, where respondent continued to live and where they jointly lived up to the time of his desertion, in the day time, and coming secretly about and into the house at night, for the purpose, as respondent believes, of injuring her character.

The cause was heard upon bill, answer and testimony, taken before an examiner.

While the testimony was being taken, the respondent filed her petition representing that the libellant owned a large amount of property, real and personal, was engaged in active business, and in receipt of an ample income therefrom, and praying for an order upon him for the payment of $500, for her support, pending the litigation, and for counsel fees.

From the testimony taken it was claimed on the part of the libellant, in substance, that the respondent was cross and disagreeable, severe in her denunciations of her husband, began to abuse him as soon as he came into the house; would not join with her husband in deeds for the conveyance of his property, and so caused him great loss and inconvenience; that she drew a revolver upon him and threatened to shoot him; fired a revolver at him, the bullet whistling by his head; called him vile names at the death-bed of a child, said he would rob, steal, murder, and burn buildings, and her conduct prevented him from attending the funeral of the child.

The respondent claimed from the testimony that the separation was caused by an unwarrantable desertion of her by her husband in 1874; that disagreements between them commenced in 1871, soon after the second child was born, which were such as are sometimes incident to married life and were not of a serious character; that between 1874 and 1881, while she was living alone, the libellant would visit the house, generally at night and secretly, and say he wanted no one to know he went there; on one occasion, in April, 1880, he visited the house at

night, made false accusations of unfaithfulness, and offered such indignities and insults to the respondent that she was impelled to commit suicide and, taking up a pistol belonging to Samuel, the eldest son, ran out upon the front porch with the intent to take her life, and was deterred by the cry of her little boy Harry, who had awakened, when she fired the pistol in the air; that the libellant owned about 1400 acres of land, of which about 400 acres were improved; also several houses, and was extensively engaged in the lumber business; two sons were born to the parties; Samuel, in January 1867, and Harry, in May 1871; that the latter died in June 1880, and the respondent continued to reside in the same dwelling, occupied by the parties soon after their marriage, during which time she was to some extent supported by libellant.

The libellant testified that he owed $34,000 or $35,000, and had not sufficient property to pay his indebtedness.

On November 14, 1887, the court, CHURCH, P. J., filed the following opinion:

The evidence in this case is ample to warrant the court in granting the divorce, and the proper decree will be prepared as prayed for.

The circumstances of the case, as disclosed in the testimony, together with the evidence as to libellant's circumstances, do not justify the court in granting an allowance of alimony except a mere nominal sum.

The rule of May 25, 1887, for counsel fees and temporary alimony is discharged.

The permanent alimony is fixed at one dollar per annum, which the court deems just and proper under the circumstances of the case.

The divorce is decreed as prayed for. Each party pay his or her own costs.

A formal decree having been filed, the respondent took this appeal, specifying that the court erred, inter alia:

1. In making the foregoing decree.

2. In decreeing a divorce on the ground that the wife had offered such indignities to the person of the husband as to render his condition intolerable and life burdensome.

3. In decreeing a divorce upon the ground of desertion,

there being no evidence proving desertion by the wife of the husband.

4. In refusing to make an allowance, pendente lite, for support and expenses of the respondent.

*Mr. Roger Sherman* (with him *Mr. Samuel Grumbine*), for the appellant:

1. There is no evidence tending in the slightest degree to prove that there was any desertion, legal or otherwise, by the respondent of her husband. There was not even an agreement for a voluntary separation, and if there had been it would not have been desertion or ground for divorce : Smith v. Smith, 3 Phila. 489 ; Boyd's App., 38 Pa. 241; Ingersoll v. Ingersoll, 49 Pa. 249 ; Vanleer v. Vanleer, 13 Pa. 211 ; Ralston's App., 93 Pa. 133 ; Angier v. Angier, 63 Pa. 450.

2. The averment of the petition, that the wife offered such indignities to the person of her husband as to render his condition intolerable and life burdensome, even if true, is not cause for the divorce of the husband from the wife. The act of May 8, 1854, P. L. 644, adds to the former causes of divorce on the part of the husband, cruel and barbarous treatment which renders his condition intolerable and life burdensome. It gives no right to a divorce for " indignities to the person " of the husband ; nor is it necessary to allege, or material, that he therefore withdrew from his house and family. To give the court jurisdiction, the cause for asking for divorce must be specifically alleged in the complaint, and must be such as is declared by the law to be a cause : Schlicter v. Schlicter, 10 Phila. 11 ; Gordon v. Gordon, 48 Pa. 236 ; Jones v. Jones, 66 Pa. 497 ; Harris's App., 2 W. N. 332 ; Miles v. Miles, 76 Pa. 358 ; May v. May, 62 Pa. 206.

3. The authorities cited, and others, say that a divorce cannot be granted upon the unsupported evidence of the complaining party : Eshbach v. Eshbach, 23 Pa. 343. But, the respondent's defence was made out under the rule that that is a sufficient defence which shows that she, herself, would be entitled to a divorce from her husband by reason of his desertion, indignities to her person and cruel and barbarous treatment : Gordon v. Gordon, 48 Pa. 226.

4. The circumstances of the libellant were such as to war-

rant an order for the payment of something for the expenses of the wife pending the suit against her. The sum asked for was $500. The court gave her nothing. This was clearly erroneous: Graves v. Cole, 19 Pa. 171; Melizet v. Melizet, 1 Pars. 78; Groves's App., 68 Pa. 143; Banes v. Banes, 8 Phila. 250; Ormsby v. Ormsby, 1 Phila. 578; Breinig v. Breinig, 26 Pa. 161; McClurg's App., 66 Pa. 366.

*Mr. Pearson Church* and *Mr. F. B. Guthrie* (with them *Mr. Julius Byles*), for the appellee:

1. The action of the court below upon the matter of the allowance of counsel fees and support pendente lite, is not the subject of appeal or error: Breinig v. Breinig, 26 Pa. 165; Waldron v. Waldron, 55 Pa. 234.

2. In a suit for a divorce, the uncorroborated testimony of the libellant, although denied, is sufficient to justify a jury in returning a verdict for libellant: Flattery v. Flattery, 88 Pa. 27. The credibility of a party must in the present as in other cases be passed upon, and when a party to a cause, permitting it, waives trial of an issue of fact by a jury and submits it to the court, the same rule should prevail.

3. The contention as to the jurisdiction and the charge of personal indignities, was neither in form nor substance presented before the court below, was not argued there, and is here and now brought to the attention of the libellant for the first time.

It is true that the act of March 9, 1855, P. L. 68, as heretofore construed by this court introduces no new causes for divorce, but merely extends the jurisdiction of the courts over parties at one time domiciled outside of the commonwealth; yet the act of May 8, 1854, empowers the court to grant divorces in a case " where the wife shall have by cruel and barbarous treatment rendered the condition of her husband intolerable and life burdensome." This act was supplementary to all the then existing divorce laws of this commonwealth. It came to the relief of the husband and gave him a remedy which he did not have before, and which the wife did have as against him. The words " indignities to the person " of the act of 1815, 6 Sm. L. 286, are in the alternative or in grammatical apposition to the words " cruel and barbarous treatment; " and the

latter are equally effective, provided they are sufficient to "render condition intolerable and life burdensome." Hence they should be considered as substantially synonymous. " Indignities to the person" furnish the actual definition of "cruel and barbarous treatment," and "cruel and barbarous treatment" is an "indignity to the person," or is a series of such indignities as meet the end sought after, provided they both or either render "condition intolerable and life burdensome."

4. Notwithstanding the cases of Gordon v. Gordon, 48 Pa. 226 ; Jones v. Jones, 66 Pa. 494, and Miles v. Miles, 76 Pa. 358, it is submitted that the true construction of the act of 1854 is in accordance with these views. Gordon v. Gordon, supra, was a libel filed by the wife, and the husband was defending on the ground of the commission of acts of violence on his person, and loose and immoral conduct, etc. This defence was properly held insufficient. The criticism, or rather the construction, given to the act of 1854 by the learned justice, who wrote the opinion of the court, was not necessary to the judgment of the court and may therefore be considered an obiter dictum. In Jones v. Jones, supra, the syllabus simply says : " The act of 1854 does not require that the treatment to be a ground for a divorce should include indignities to the person," and " the treatment to the husband as a ground of divorce is that which renders his condition intolerable and life burdensome, which includes those acts that endanger life."

In Miles v. Miles, supra, neither the libel nor answer is given, and we can only guess at the issue from a perusal of the short per curiam opinion.

5. The evidence brought up will bear us out in the position that this cause was heard and argued, in the court below, on the merits, and as if the libel had originally charged cruel and barbarous treatment such as to endanger the libellant's life and render his condition intolerable and life burdensome. In such a case, this court even after error brought will allow the proper amendment : Waite v. Palmer, 78 Pa. 193 ; Wampler v. Shissler, 1 W. & S. 370 ; Morris v. McNamee, 17 Pa. 173 ; Miller v. Weeks, 22 Pa. 89 ; Toone v. Toone, 10 Phila. 174 ; Bailey v. Musgrave, 2 S. & R. 220.

6. It is unnecessary to add that there is no provision any-

where made for an appeal from the amount of alimony fixed by the court. The amount to be fixed is like the assessment of unliquidated damages for a tort, or for the breach of a contract by a jury. It is final. There must be a decree for alimony for some amount, because the law says so; but the amount is left to the discretion of the judge, and from this there is no appeal: Breinig v. Breinig, 26 Pa. 161. In the case before us this discretion was exercised in the only way worthy, for the evidence showed that the libellant was practically insolvent and his financial condition has been growing worse and worse yearly.

OPINION, MR. JUSTICE PAXSON:

This decree must be reversed. The libellant alleges as his grounds for divorce (*a*) desertion, and (*b*) indignities to his person, etc. It is sufficient to say, briefly, that the desertion was not proved; nor was there even an attempt to prove it. The respondent did not leave her home; on the contrary, she has continued to reside in it with her children down to the present time. If there was any desertion, it was on the part of the libellant.

The other ground for divorce is, that the wife offered such indignities to the person of the husband as to render his condition intolerable and life burdensome. The act of assembly does not authorize a divorce for this cause at the suit of the husband. It must be on the application of the injured wife.

A motion was made at bar for leave to amend the libel by inserting an averment of cruel and barbarous treatment by the wife. We declined to allow the amendment for the reason that it made a change in the cause of action, requiring for its support a different line of proof. The libellant could have amended below, when, if the respondent was of opinion that additional evidence was required to meet the new charge, she would have had an opportunity to introduce it. It would be unjust to allow the amendment at this stage of the proceedings.

The most remarkable feature of the case was the refusal of the court below to allow the respondent either alimony pendente lite, or counsel fees and expenses. The rule of May 25, 1887, for counsel fees and temporary alimony was discharged. The permanent alimony was fixed at one dollar per annum.

In Breinig v. Breinig, 26 Pa. 161, it was said by BLACK, J.: " It has been the uniform practice to allow a wife destitute of a separate estate, who is either suing or defending a cause of divorce, such reasonable sum as will enable her to carry it on." The libellant here is the husband. He is the owner of lands, farms, mills, and houses, and is engaged in business. He forced this litigation upon his wife, and she is compelled to employ counsel and incur large expenses in defending herself. The printing of her paper-book alone cost $129.75. To deny her the means to defend herself is to deny her justice. The refusal of the court below to make any allowance for her counsel fees and expenses, was such a palpable abuse of discretion that we will correct it here.

The decree is reversed and the libel dismissed at the costs of the libellant; the rule of May 25, 1887, for counsel fees is made absolute ; and it is now ordered that the libellant pay to the respondent the sum of five hundred dollars as the proper allowance for counsel fees and expenses in this litigation. It will be the duty of the court below to enforce this decree.