# Hartje, Appellant, *v.* Hartje.

*Divorce—Alimony—Counsel fee and expenses of wife.*

1. Where a husband files a libel for divorce against his wife and alleges
adultery as the ground for the suit, and the wife spends large sums of
money advanced to her by her father in employing counsel and detect-
ives and on general expenses in the suit, and establishes her innocence
and secures the conviction for perjury of witnesses suborned by her hus-
band, the husband will be required to pay all such expenditures and ali-
mony, and the appellate court will not be astute in determining whether
all the items claimed were absolutely necessary, when the lower court
with full knowledge of all the facts and the exercise of its discretion, has
allowed them.

2. It has been the uniform practice to allow a wife, destitute of a sepa-
rate estate, who is either suing or defending a suit in divorce, such a rea-
sonable sum as will enable her to carry it on.   She cannot sue in forma
pauperis, for she is not a pauper if she is the wife of a man who has prop-
erty.   To deny her the means to pay for process and professional aid is to
deny her justice.   The amount is a question for the discretion of the
court.

Argued April 16, 1909.   Appeal, No. 89, April T., 1909, by
plaintiff, from order of C. P. No. 2, Allegheny Co., Jan. T., 1906,
No. 159½, allowing alimony and counsel fees in case of Augustus
Hartje v. Mary Scott Hartje.   Before Rice, P. J., Porter,
Henderson, Morrison, Orlady and Head, JJ.   Affirmed.

Petition for allowance to wife, respondent, for alimony, coun-
sel fees and expenses.

*Error assigned* was order on the petition.

*John S. Ferguson*, with him *John Marron* and *William B.
Rodgers*, for appellant.—Alimony during the suit should be
confined to the actual wants of the wife, wholly uninfluenced by
the fact that the plaintiff is affluent: Doolittle v. Doolittle, 78

Iowa, 691; Leslie v. Leslie, 6 Abbott's Practice (N. S.) 193; Germond v. Germond, 4 Paige (N. Y.), 643.

There is no law that makes it the duty of the court to allow anything to a wife to prosecute or defend a suit for divorce. Such allowance rests in the discretion of the court: Breinig v. Breinig, 26 Pa. 161; Powers's App., 120 Pa. 320.

*John M. Freeman*, of *Watson & Freeman*, with him *Patterson, Sterrett & Acheson*, for appellee.—Allowances for counsel fees, expenses and alimony pendente lite in divorce proceedings are in the discretion of the court and will not be disturbed on appeal except an abuse of discretion clearly appears: Powers's App., 120 Pa. 320; Breinig v. Breinig, 26 Pa. 161; Banes v. Banes, 3 Brewster, 612; Fernald v. Fernald, 5 Pa. Superior Ct. 629.

The allowance for alimony, expenses and counsel fees should be liberal, the court having decided that Mrs. Hartje was not guilty of the incriminating charges made by libelant against her: Collins v. Collins, 29 Ga. 517; Harding v. Harding, 180 Ill. 481 (54 N. E. Repr. 587).

Where the husband is wealthy and has a large income, the wife is entitled, as shown by the case, to a liberal allowance. Especially is this true after the court has decided that she was not the guilty party: Kettlewell v. Kettlewell, L. R. (1898), P. D. 138; Cooper v. Cooper, 185 Ill. 163 (56 N. E. Repr. 1059); Moore v. Moore, 130 N. C. 333 (41 S. E. Repr. 943); Harding v. Harding, 144 Ill. 558 (32 N. E. Repr. 206).

The court may also direct the payment of expenses, or suit money as it is sometimes called, at any time during the pendency of the proceeding; and it is immaterial that the application is not made until after the expenses are incurred: Griffin v. Griffin, 47 N. Y. 134; Borckman's App., 2 Walker, 285; Fernald v. Fernald, 5 Pa. Superior Ct. 629; Rieder v. Rieder, 21 Pa. Superior Ct. 488; King v. King, 36 Pa. Superior Ct. 33; Russell v. Russell, 69 Me. 336.

OPINION BY ORLADY, J., July 14, 1909:

This appeal is from an order made June 17, 1907, refusing

libelant's request for the appointment of an examiner to take testimony of witnesses, and a further order making absolute a rule at the instance of the respondent for allowance of counsel fees and expenses incurred in defending this proceeding.

The parties were married March 15, 1894, and lived together about eleven years, during which time four children were born, two of whom died when four or five years of age, and at the inception of this proceeding there was living a son, twelve years of age, and a daughter aged seven. The family lived in a prominent residential section of the city of Pittsburg.

The libel filed October 19, 1905, charged that the respondent, in violation of her marriage vows, for a considerable time past had given herself up to adulterous practices, and on date given and at divers times before and after, had committed adultery with a person named and divers other persons. The respondent filed her answer six days later, positively denying every charge made or suggested in the libel. The libelant secured the services of three eminent attorneys of the Allegheny county bar, and in addition his brother and a brother-in-law, who were attorneys, actively aided in the procurement of testimony. The case was vigorously prosecuted and defended. It was specifically charged by the husband that Mrs. Hartje had committed adultery with a stable man, and a negro house servant, and by a supplemental bill she was charged with making and keeping appointments at the Hotel Lincoln, regularly during the years 1903 and 1904, and at a public house on Watson street in the city of Pittsburg, no co-respondent being named in the latter charges, and further with communicating to the libelant a loathsome venereal disease. At the instance of the respondent the court granted a rule on the libelant for a bill of particulars as to the names and places where it was alleged she had been implicated. Libelant refused to give the names of the alleged co-respondents involved in the Hotel Lincoln and Watson street charges and abandoned these grave charges against his wife. The trial of the case began June 25 and continued until August 6, and presents a record of 2,000 pages of printed matter furnished by ninety-four witnesses, and a large number of exhibits, a number of which were the

subject of earnest investigation as alleged forgeries. The trial resulted in a decree of divorce being refused, and the proceedings were dismissed at the cost of the libelant. The record was then removed to this court on appeal (35 Pa. Superior Ct. 14) in which the assignments were all overruled and the appeal dismissed at the cost of the appellant. After the argument of the cause in this court, a petition was presented on behalf of the libelant praying this court to assume original jurisdiction in the matter, and take such steps and make such orders for the taking of additional testimony in support of the petition as might be deemed necessary. After a full hearing the prayers of the several petitions for suspending the hearing of the case for the purpose of taking additional testimony were denied. An application was made to the Supreme Court for the allowance of an appeal, and this was refused. This conclusion must be accepted as a finding that the husband's charges are not sustained.

The deposition of a negro stable servant, Clifford Hooe, was procured by the libelant, in which acts of adultery were alleged with Mrs. Hartje. Immediately thereafter, the negro servant fled the state, but he was followed by detectives in the employ of the respondent, and subsequently apprehended and brought back to Pittsburg, convicted of perjury on his own confession with additional proof, and sentenced to six years in the penitentiary. Another witness, William B. DeCost, an accomplice of Hooe, was indicted and convicted of perjury in testifying that the respondent had met Hooe at DeCost's store for improper purposes. On an appeal to this court that judgment was affirmed, from which decision the Supreme Court refused an appeal.

A principal witness in the case was one Thomas Madine, a stable and house servant, with whom it was originally alleged the respondent had committed adultery. On the trial this witness was subjected to a severe cross-examination by the libelant and he testified unequivocally that no improper relations had ever existed between him and the respondent. Subsequently, when the case was before this court for rehearing, an incriminating affidavit was secured from Madine by the libel-

ant which affected the character of the respondent. It was alleged by the respondent that $10,000 had been paid to Madine by the libelant as a consideration for this testimony. The petition, answer and affidavits were made a part of the respondent's petition, but are not printed by the appellant. In the answer filed by the libelant in regard to this allegation he admitted that "rather than miss the opportunity to get said letters into his possession he did pay the said Madine some money therefor; the amount of which he is prepared to state if it becomes necessary; but for the present he neither admits nor denies the amount as alleged in the petition."

On the hearing in the rule in the present case the respondent averred that she had no estate whatever of her own and no income whatever from any source. That the libelant has contributed nothing whatever since July 23, 1905, the date of the separation, towards the support of her and her two children, and that she has been wholly dependent upon her father for means to support herself and the two children aforesaid, and avers, "Your petitioner is informed, and believes and avers that the said libelant Augustus Hartje, is worth at least the sum of $1,500,000, and that he has an income therefrom in excess of $75,000 per year." To which in his answer filed the libelant replied as follows: "Respondent denies that the alleged information of the petitioner as to what this respondent is worth, and what his income is, is correct; whenever the court will require information as to these matters the respondent will be ready and willing to furnish it." This is not a denial of the averment that he was worth the amount named, and must be treated as evasive and not responsive. The amount of his estate and its income were important facts in determining the question before the court, and his refusal frankly to inform the court of that fact, is certainly not a circumstance favorable to him.

The common law as well as the decisions of our own courts require a husband who wages such an assault on his wife to supply all necessary and reasonable expenses to withstand it, if he is of sufficient financial ability. Such a strenuous attack on the virtue of a wife and mother must be met either by abject sur-

render on her part, or she must defend her honor and maintain the fair name of her children by every means known to the law, and the allowance should be as generous as her necessity requires. She employed zealous and capable counsel to represent her, and only after the conclusion of the proceeding for divorce in the Supreme Court, did she present this petition for an allowance for counsel fees, expenses, and for alimony pendente lite. In this petition she avers that on account of the false charges made by the husband, and the wicked course pursued by him in bribing and suborning witnesses, she constantly required the advice of counsel; and that they were actively engaged in connection with the case since October, 1905, is shown by the record of the court. With her petition she submits a statement of her expenses aggregating $29,512.07; and avers that all the expenses were incurred and all services were employed and rendered under the advice of her counsel as being necessary to secure evidence and witnesses to defend herself properly in the suit pending, and in no other case, and that she had to maintain her two children, who were in her custody by virtue of an order of the same court made in habeas corpus proceeding; she accompanied her affidavit with one made by the director of the detective agency which was employed, setting out that in all forty-four different operators of the agency, not including operators in other cities, had been at work on the case, as shown by the statement attached, and that the investigation required communication with and travel into a number of states adjoining Pennsylvania, and further that all the expenses were necessarily incurred in examining witnesses and furnishing proof from many remote places. Exceptions were filed by the libelant alleging that the expenses were incurred by her unlawfully, unreasonably and unnecessarily, but it is not specified in what particular this defect existed. After an examination of her bill of items we are not disposed to weigh any particular one in the scales of technical nicety, as required in accounts of ordinary trade and barter. Doubtless some of the services rendered by the detectives did not result in special or direct advantage, and in her search for corroborative proof of her innocence, or of the guilt of her husband and the

parties he selected as his aids to supply the necessary facts to secure his divorce she may have been misled, and some expenses incurred that afterwards were determined to be of no practical advantage, but such is the experience of all who are obliged to make a like investigation. Every feature of her defense in this case was conducted by able attorneys, who directed what should be done in each instance, and it is to be presumed that they had good professional reasons for their preparation of her case. The libelant is not clear in his challenge of the items of the bill, and the general statement is evasive and indefinite.

To judge of the propriety of this order, which is largely dependent upon judicial discretion, we should at least have before us the whole record of the case, as it was before the court below when the order was made. In disposing of the case the court had before him all that had preceded this rulē, from the filing of the libel, through all the pleadings, the tedious and complicated trial of the case up to the final decree, and was personally familiar with all the facts as they were developed, and in assuming judicial knowledge of the facts thus learned through the hearings in the same case and in taking judicial cognizance of what he himself had done as judge, as well as of the testimony adduced before him in the trial, the court acted clearly within the authority fixed by decisions: 16 Cyc. 851. He regarded the statement of expenditures filed by the respondent as merely advisory, and treated it only as information to be considered with other matters of which he had knowledge. The payment of the items was not denied. Mrs. Hartje testified that she did pay them in full.

The only assignment urged is that they were unnecessary and unlawful. In the light of all the facts of the case, and having a due regard for the libelant's ability to pay, the order was made directing him to pay to the respondent "for counsel fees the sum of $7,000; and for support to January 1, 1908, and on account of expenses incurred by her in her defense, including services of writing experts and detectives, procuring the attendance of witnesses from beyond the jurisdiction of the court, cost of paper-books, and incidental expenses, the further sum of

$26,750." Taking into consideration the estate of the libelant, the character of the charges made and his failure to sustain them, the perjury and subornation involved in the case, the gravity of the charge, and the respondent's financial inability to make her defense, the aggregate of these two items, $33,750, is not to be considered an unreasonable amount which the losing party should pay, and not having the record before us on which the decree was founded, we cannot convict the court of an abuse of discretion.

It was stated in Graves v. Cole, 19 Pa. 171, when a wife has no separate support she must be subsisted and her necessary costs paid, pending proceedings for divorce. This rule is necessary; otherwise she might be denied justice for want of the funds required for vindication of her rights, and for this reason, if necessary, she may in general have her costs taxed de die in diem. In Breinig v. Breinig, 26 Pa. 161, the court says: It is argued that the court ought not to have allowed the respondent so much alimony, nor nothing at all for her expenses. If there was error in this, we have no authority to correct it. There is nothing on this record by which we could know whether the alimony was too much or too little. We are bound, for this reason, if for no other, to presume that the judge who had all the facts before him, decided the matter rightly. It has been the uniform practice to allow a wife, destitute of a separate estate, who is either suing or defending a case of divorce, such a reasonable sum as will enable her to carry it on. She cannot sue in forma pauperis, for she is not a pauper if she is the wife of a man who has property. To deny her the means to pay for process and professional aid is to deny her justice. The amount is a question for the discretion of the court.

In Waldron v. Waldron, 55 Pa. 231, the Supreme Court says: It is undoubtedly the duty of the court to make a proper allowance to the wife if she be not herself of sufficient ability to enable her to maintain or defend her suit, having regard to the ability of her husband, and it never fails to do so, but this is entirely within the discretion of the court, both as to amount and duration, and not subject to review. And again in Powers's Appeal, 120 Pa. 320, after quoting from Breinig v. Breinig, it was

held that it has been the uniform practice to allow a wife destitute of a separate estate, who is either suing or defending a case of divorce, such a reasonable sum as will enable her to carry it on, the court says: "The libellant here is the husband, who is the owner of lands, farms, mills and houses, and is engaged in business. He forced this litigation upon his wife and she is compelled to employ counsel and incur large expense in defending herself. To deny her the means of a defense is to deny her justice. The refusal of the court below to make any allowance for her counsel fees and expenses was such a palpable abuse of discretion that we will correct it here."

In Fernald v. Fernald, 5 Pa. Superior Ct. 629, where the court below made absolute a rule for payment of $125 for traveling expenses and the like, and refused an order to the respondent to submit to cross-examination by the libellant, for the purpose of showing what her assets, etc., were, this court stated, "Want of sufficient ability to pay does not imply absolute destitution and dependence upon the charity of others for support. The appellate court will not reverse except for plain abuse of discretion." And in Jones v. Jones, 37 Pa. Superior Ct. 442, we held, even if it be conceded that the appeal arises from an interlocutory order of this nature, it is clear that the appellate court will not reverse except for plain abuse of discretion, and that nothing approaching that appears in this case. Her counsel decided that it was vitally important for her to employ eminent handwriting experts in order to disclose the forgery of her alleged letters, and of detectives and special agents to expose the perjury of important witnesses for the libellant. Had the learned judge below arranged the distribution of the aggregate sum in any other manner, we should accept his conclusion as representing his judicial discretion after a full investigation and knowledge of all the facts of the case; and to reverse his order we should at least have like information and be convinced that his discretion was wrongly exercised.

The selected counsel of the respondent are gentlemen of high professional character, and it is evident that all the investigations that were made and all expenses that were incurred were subject to their supervision, and the payment of the bills was

made only under their professional scrutiny. Added to this was the trial judge's approval of the expediency of such engagements and payments.

To grant a rule as prayed for, or to take further testimony would be practically to open up the whole proceeding and retry many of its phases. It is urged, and not without a show of reason, that the principal purpose to be served by such an investigation would be, if possible, to secure evidence to be used on behalf of the libelant in his defense to a pending action of divorce which was brought against him by the present respondent. The court below was much more familiar with the facts than this court can be owing to lack of the record as above suggested, and we do not find, from our examination of the case, that there was any abuse of discretion.

The assignments of error are overruled. The decree is affirmed.


RICE, P. J., dissenting:

While the learned judge of the common pleas had acquired ample information in the trial of the principal case to enable him to determine that the respondent was justified in employing detectives, yet it seems to me that upon the question of the amount alleged to have been expended by her and as to the purposes for which detectives were employed it was incumbent on her to produce some evidence in addition to her ex parte affidavit and the affidavit of the chief of detectives. I am therefore unable to concur with my brethren in affirming that part of the decree relative to the sums paid for detective service.


PORTER, J., concurs in foregoing.