# Lynn *v.* Lynn, Appellant.

*Divorce—Alimony—Alimony pendente lite — Counsel fees—Divorce a mensa et thoro.*

In proceedings for divorce it is the duty of the court to make a proper allowance to the wife, if she be not herself of sufficient ability, to enable her to maintain or defend her suit having regard to the ability of her husband. The orders which a court makes of expenses to be allowed to a wife, during the proceedings, are in their nature interlocutory and often made upon the hearing of oral testimony, and as a general rule are purely within the sound discretion of the court.

The amount of the allowance to be made for expenses, counsel fees and alimony pendente lite, being a matter with which the court is vested with discretion, the appellate court will not reverse except for a plain abuse of discretion.

Where on a libel for divorce a mensa et thoro by a wife against a husband on the ground of cruel and barbarous treatment, a rule is taken for counsel fees and alimony pendente lite, and the evidence indicates that the cause is to be bitterly contested, an order allowing the libellant $750 for counsel fees and $536 for legal expenses, will be sustained on appeal, but $100 per week alimony pendente lite will be reduced to $200 per month, where it appears that the court below took into consideration the extravagant manner in which the parties had lived, and the large income of the husband for a number of years, without taking into consideration that at the time the libel was filed the husband's income had been greatly reduced, and his estate placed in a precarious condition by financial reverses.

It seems that as the Act of February 26, 1817, 6 Sm. L. 405, relating to divorce a mensa et thoro, limits the amount of permanent alimony to which the wife shall be entitled, in case she succeeds in establishing her right to a final decree, to the one-third of the income from the property and labor of the husband, the amount of alimony awarded pendente lite should not substantially exceed that limit.

Argued Dec. 11, 1916. Appeal, No. 331, Oct. T., 1916, by defendant, from order of C. P. No. 5, Philadelphia Co., June T., 1916, No. 17, making absolute rule for alimony, expenses and counsel fees, in case of Alberta H.

324, (1917).]      Statement of Facts—Arguments.

Lynn v. Jacob H. Lynn.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.   Order modified.

Libel for divorce a mensa et thoro under the Act of February 26, 1817, 6 Sm. L. 405.

The libel charged cruel and barbarous treatment. It concluded as follows:

7. And the libellant avers that in violation of respondent's marriage vow and of the laws of this Commonwealth, the respondent for a period of three years and upwards, did by cruel and barbarous treatment endanger the life of the libellant; That such cruel and barbarous treatment consisted of the numerous improper and wrongful acts and course of conduct set forth in detail in Paragraph 6 of this libel.

8. Wherefore the libellant prays that a decree may be given by your honorable court granting this libellant a divorce from bed and board, and also allowing such alimony as the said respondent's circumstances will admit of, so as the same does not exceed the one-third part of the annual profit or income of his estate, or of his occupation and labor.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in making the following order: "September 22, 1916, Rule absolute for $750. Counsel fee, $536 Expenses, and $100 per week alimony pendente lite to begin August 9, 1916."

*J. Hibbs Buckman,* with him *W. J. Sturgis,* for appellant.—An interlocutory order for alimony pendente lite rests in the discretion of the court, and must, where the husband is not the party suing, be supported by proof of a reasonable necessity arising for it from the situation of the libellant, otherwise destitute of the means of enforcing her rights, as well as of a propriety for it in view

of the situation of the husband: Shoemaker v. Shoemaker, 5 Pa. Dist. Rep. 449; Horst v. Horst, 18 Lanc. Rev. 14; O'Hara v. O'Hara, 12 Pa. C. C. R. 603; Gleason v. Gleason, 12 W. N. C. 408; Humphreys v. Humphreys, 33 Pa. C. C. R. 538; Tubbs v. Tubbs, 25 Pa. C. C. R. 26.

The law does not contemplate taking away from the husband a portion of his estate and giving it to the wife but simply provides for her support, and no ground or cause is shown for awarding any alimony. In fact, if the libellant is entitled to any alimony she is entitled as a maximum in any event to one-third of the husband's annual profits only. These profits have been less than $4,000 per year, for a number of years past. What they may be in the future does not enter into this case as the courts have held that that can be changed and taken care of should they increase: McClurg's App., 66 Pa. 366.

*Thomas . F. Gain,* with him *Harmon Yerkes* and *Francis Shunk Brown,* for appellee.—The evidence disproves the contention that there was an abuse of discretion: Hartje v. Hartje, 39 Pa. Superior Ct. 490.

OPINION BY PORTER, J., December 13, 1917:

This is an appeal from an order of the court below made in a proceeding for divorce in which the wife was the libellant. The order appealed from required the respondent, the husband, to pay to the libellant $750 as counsel fees, $536 expenses to be incurred in litigation and $100 per week alimony pendente lite, from which order the respondent appeals.

In proceeding for divorce it is the duty of the court to make a proper allowance to the wife, if she be not herself of sufficient ability, to enable her to maintain or defend her suit having regard to the ability of her husband: Waldron v. Waldron, 55 Pa. 231. The orders which a court makes of expenses to be allowed to a wife, during

the proceedings, are in their nature interlocutory and often made upon the hearing of oral testimony, and as a general rule are purely within the sound discretion of the court. "An abuse of this discretion might be reached in order to effectuate justice": McClurg's App., 66 Pa. 366. The amount of the allowance to be made for expenses, counsel fees and alimony pendente lite, being a matter with which the court is vested with discretion, the appellate court will not reverse except for a plain abuse of discretion: Jones v. Jones, 37 Pa. Superior Ct. 442; Fernald v. Fernald, 5 Pa. Superior Ct. 629; Powers' App., 120 Pa. 320. It is contended on the part of the appellee that this appeal cannot be sustained, for the reason that the order was one within the discretion of the court and is not reviewable, but the authorities above cited clearly establish the principle that such an order may be inquired into for the purpose of ascertaining whether there has been an abuse of discretion. In so far as the money to be paid under such an order is involved, the order is final; if the respondent pays it he can never recover it back. It would seem manifest that an abuse of discretion in such a case ought to be reached in order to effectuate justice.

The libellant having taken a rule for the payment of counsel fees, expenses and alimony pendente lite, the respondent filed an answer denying the allegations of the petition and the parties took depositions as to the situation of the libellant and the financial ability of the respondent, her husband, to pay. We have thus brought before us the evidence upon which the court below based its order. The case is, therefore, different from Waldron v. Waldron, above cited, and Breinig v. Breinig, 26 Pa. 161, in which cases there had been a jury trial and the orders were founded upon oral evidence. The question upon which we have to pass is, did the court below in making the order abuse the discretion with which it was vested? The evidence indicates that this cause is to be bitterly contested. We have already had before us

three counsel of high standing representing this respondent and we do not deem it unreasonable that the libellant should deem it necessary to have the advice and assistance of the very able counsel who represent her. We are not convinced that the court below erred in directing the respondent to pay the libellant counsel fees to the amount of $750 and expenses to the amount of $536. The award of alimony pendente lite at the rate of $100 per week is a more serious matter. It is not usual to award alimony pendente lite at the rate of $5,200 per year. The court below filed no opinion indicating the ground upon which it based its order. We have with care examined the testimony and are convinced that the court below must have given undue weight to the manner in which these parties had lived during the years immediately following their marriage, and that it lost sight of the evidence relating to the financial condition of the respondent at the time this order was made. In fixing the amount of alimony to be paid pendente lite it is entirely proper to consider the manner in which the parties have lived, but it is also necessary to consider what had been the results of their style of living upon the financial condition of the husband and whether there has been any change in his financial condition. These parties were married in 1907. The respondent was engaged in dealing in coal lands in the County of Fayette and the adjacent counties of western Pennsylvania. Dealing in coal lands and options upon coal lands in western Pennsylvania and West Virginia gave rise to dreams of great wealth and continuing prosperity to those engaged in the business. There can be no doubt that both this libellant and respondent were of opinion that the operations of the respondent would continue indefinitely successful and as a consequence they spent money very freely. They may have lived extravagantly. During a period between 1907 and 1915, according to the testimony of the libellant, they had eleven Packard, two Franklin and a Ford car, and their other expendi-

tures seem to have been on the same scale. In the year 1913 a change came over the financial outlook, the opportunities for making money out of speculations in coal lands became limited, and the production of coal and coke became less profitable. The respondent, as part of the fruits of his transactions in the past, holds judgments to an amount in excess of $58,000, but the amount which he may be able to realize on those judgments is uncertain. The respondent was forced to change his style of living and the manner in which they lived during more prosperous days can no longer be taken as the basis upon which the libellant should be paid alimony pendente lite. We must consider the present income of the respondent.

The respondent owns a farm upon which is a fine residence, the former home of the parties, it is at present unoccupied save by a caretaker and the income from the rent of the farm is insufficient to pay the taxes and the maintenance of the place. He owns two tracts of coal underlying farms in Greene County, the coal being undeveloped and producing no revenue. The only source from which he derives an income is from a property in Fayette County in which he owns an interest, upon which there is erected a coke plant operated by a corporation, the stock in which is owned by the same parties in the same proportion in which they own the land. The legal title to one-half of this tract of coal was formerly in the respondent, but in 1912 the libellant and the respondent joined in a deed conveying one-fourth of this tract of coal to L. E. Lynn, the father of the respondent, thus leaving title to one-fourth of the coal in the respondent. The libellant contends that the respondent still actually owns one-half of the property, but the evidence in support of that contention was wholly insufficient to impeach the deed conveying one-fourth of the property to L. E. Lynn. There was no evidence that this respondent had received from this property, during the three years prior to May 1, 1916, more than $8,875. He received during the same period $1,500 from the Simp-

son Supply Co., which carried on a store in connection with the coke works, making a total for the three years of $10,375. The corporation which operated the coke plant paid a high rate of royalty for the coal which it mined, it seeming to have been the intention of the parties that their total profits from the operation should as nearly as possible be covered by royalty which the corporation paid to the individual owners of the coal. The stock in the corporation being owned by the same parties and in the same proportion in which they owned the coal, it mattered not whether they received their profits as royalty for the coal or as dividends from the operating company. There was, it is true, due from the corporation to the owners of the coal royalties amounting to $49,242, but the operations of the corporation had resulted in a deficit of $4,546, thus leaving $44,696 due to the owners of the coal. The one-fourth interest of the respondent in these unpaid royalties would be $11,174. It is necessary, however, to bear in mind that this was the price of coal removed from the property; it involved an impairment of capital. The tract of coal had originally contained between one hundred and fifty and one hundred and sixty acres and after it had been in operation for about seven years there remained only one hundred and nine acres of coal; almost one-third of the coal was gone. When the remaining one hundred and nine acres is mined out that will be the end of the operation, the coal being gone the one hundred and forty ovens which were erected for coking it will cease to have any value, the whole property will be worthless. The total amount which the respondent had received for royalties from the beginning of operations in May, 1911, to May 1, 1916, was $30,616.25, out of which he paid as his share of taxes, interest and payments upon a mortgage on the property the sum of $12,460.30, leaving a net balance of $18,155.95. If we add to this the respondent's one-fourth of the royalties which have not been paid we have a total of between $30,000 and $31,000, for the five years.

The respondent has an indebtedness in the form of notes and mortgages to an amount in excess of $70,000, this does not seem to be questioned. If it be conceded that he owns as much undeveloped coal in Wayne Township, Greene County, and that it is worth as much money as the libellant asserts, that tract is worth only $167,200, and the tract of coal in Spring Hill Township, in said county, is worth only $28,530. The farm, with the residence, in Bucks County, may at the outside be worth $27,000. These are all outside figures and it is doubtful whether the properties are worth nearly so much money, but even if they are worth all that it is claimed, they are still unproductive, while the interest on the respondent's very large indebtedness is constantly accumulating. We are of opinion that the court below exceeded its discretion in requiring the respondent to pay alimony pendente lite at the rate of $5,200 per year. His financial condition is certainly not entirely free from difficulty, nearly all his real estate being subject to the lien of mortgages and judgments. The writer is of opinion that the amount which a husband ought to pay as temporary alimony, during the pendency of the proceeding, is not necessarily limited to one-third of the income from his property or labor, as is her permanent alimony in case she succeeds in establishing her right to a divorce from bed and board, under the provisions of the Act of 1817. The breaking up of a common home may necessitate unusual expenditures on the part of the wife. The majority of the court do not concur in this view, but hold that, as the statute limits the amount of permanent alimony to which the wife shall be entitled, in case she succeeds in establishing her right to a final decree, to the one-third of the income from the property and labor of the husband, the amount of alimony awarded pendente lite should not substantially exceed that limit. The majority of the court are, therefore, convinced that the allowance of alimony pendente lite in the present case ought not to exceed $200 per month and that the order of the court

below should be modified accordingly. In fixing this amount thus temporarily we are not to be understood as intimating that permanent alimony should be awarded in the same amount in case the libellant succeeds in establishing her right to a decree of divorce. The parties have the right to take further testimony upon this question and that testimony may disclose that at that time the income of the respondent is more or less than sufficient to warrant the award of alimony in the sum indicated.

The order of the court below is modified and it is now ordered that the respondent pay to the libellant $750 for counsel fees, $536 for expenses and $200 per month alimony pendente lite, to be computed from August 9, 1916, said counsel fees, expenses and alimony down to January 9, 1918, to be paid on or before that date, and alimony after that date to be paid monthly, until final decree of the court below.