Scherer *v.* Scherer, Appellant.

Argued November 10, 1959. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*William J. Graham,* with him *Harry Lazier,* for appellant.

*Gilbert E. Morcroft,* for appellee.

OPINION BY ERVIN, J., December 17, 1959:

Plaintiff, Gertrude Scherer, commenced an action for divorce from bed and board on July 8, 1958. Subsequently a petition for alimony pendente lite and counsel fees and expenses was filed by the plaintiff-wife and, after hearing, the court, by order dated Sep-

tember 10, 1959, ordered the defendant to pay $200.00 toward counsel fees and to make payments upon the homestead owned by the entireties covering the mortgage, the taxes and the fire and public liability insurance, and, in addition to the foregoing, the defendant was ordered to pay to the plaintiff the sum of $50.00 per week for alimony pendente lite. The defendant appealed.

The parties were married on June 30, 1951 and the husband, during the entire period of the marriage until April 28, 1959, was employed by the Standard Auto Parts Company and received salary and bonuses of approximately $20,000.00 to $23,000.00 a year. They lived and entertained on a scale commensurate with the defendant's earnings. The home in which they lived cost $38,500.00 and at the time of the hearing was valued at approximately $45,000.00 to $50,000.00. The title was in both names as tenants by the entireties. Walter Burke, who owned Standard Auto Parts Company, died January 30, 1959 and the defendant was unable to buy the stock representing the controlling interest of that company at an Orphans' Court sale held April 28, 1959. Edward Burke, son of the owner, acquired the stock and because of a clash of personalities between Edward and the defendant, the defendant severed his relations with Standard Auto Parts Company. On June 1, 1959 the defendant started as president and manager of Standard Automotive Stores, Inc. This company was owned by C. E. McDermott of Akron, who put $25,000.00 into the business. The defendant received no income for May and June of 1959. On July 25, 1959 he received his first weekly pay of $100.00 a week, representing a take-home pay of $86.00 per week. The hearing in the present matter was held on August 11, 1959. In addition to his weekly pay the defendant receives approximately $340.00 a year as dividends on stocks. On August 1 he had a bank bal-

ance of $1,970.38. He had had around $4,500.00 in the bank but living expenses had reduced it to the above amount. His new place of business is at Beaver Falls, where he rooms at a hotel. The company pays the daily rental of $5.00 for the room. It is also paying for his car and its upkeep. He usually spends his week-ends going home on Saturday night and staying home Saturday and sometimes Sunday in their joint property. The wife has continued to live in this property and the husband has been paying all expenses in connection with the running of the house.

We have examined the record carefully and do not believe that the defendant has any earning capacity or assets except those hereinbefore referred to. The defendant is now 55 years of age and testified that "There is no one in the industry who would hire me and pay me a salary because of the short time I have to work as a developer for them." He is really starting a new business on the capital of Mr. McDermott and because of his business experience he has hope of increasing his weekly earnings from $100.00 to $150.00 a week in another year or year and a half. He also has a tentative arrangement with Mr. McDermott that after the business has been established they will make some division of the stock. The business of selling auto parts in which he is engaged is a very competitive one and its future success has to be proved. This is not a case where a husband who has the capacity refuses to seek employment. On the contrary, the defendant felt, because of his age and other circumstances, that his best opportunity for success in the future was in the business venture in which he is now engaged. The principal asset which the defendant now has is his interest in the home which is owned as tenants by the entireties. The wife is already obtaining the benefit of this home.

In the case of *Lynn v. Lynn,* 68 Pa. Superior Ct. 324, the court was faced with a similar problem. In

reducing the amount of the alimony pendente lite ordered from $100.00 per week to $200.00 per month, the Court observed, at page 328: "We have with care examined the testimony and are convinced that the court below must have given undue weight to the manner in which these parties have lived during the years immediately following their marriage, and that it lost sight of the evidence relating to the financial condition of the respondent at the time the order was made. In fixing the amount of alimony to be pendente lite it is entirely proper to consider the manner in which the parties have lived, but it is also necessary to consider what had been the results of their style of living upon the financial condition of the husband and whether there had been any change in his financial condition."

The wife was capable of earning $12.00 a day, she having been employed in January 1959 and one week in February with the Heart Fund. She was not employed at the time of the hearing. There were no children of this marriage but a daughter of the plaintiff by a former marriage lived with her. This child was supported by her father. At the time of the hearing she was 21 years of age and a senior in college. The defendant was ordered to "make payments upon the homestead owned by the entireties covering the mortgage, the taxes, and the fire and public liability insurance. . . ." The record seems to indicate that these items approximate the following: Taxes, $60.00 a month; mortgage, $126.60 a month; insurance, $10.00 a month; total $196.60 per month. If we add to this the support order of $50.00 per week, it will be seen that the defendant is required to pay approximately $400.00 a month under this order. His income from his take-home pay of $86.00 a week plus his return from securities of approximately $6.50 per week gives a total income of $92.50 per week. It is apparent that the defendant cannot comply with this order in his

present circumstances. While nothing we may do will enable these people to live as they have in the past, with the husband's present income, we believe justice will be more nearly approached by reducing the weekly payment of alimony to $25.00 per week.

We assume that the appellant will voluntarily continue to make the payments on the homestead owned by the entireties covering the mortgage, taxes and the fire and public liability insurance, because of the sizable equity to be preserved.

The order of the court below is modified and it is now ordered that the appellant pay to the appellee the sum of $200.00 toward counsel fees and the sum of $25.00 per week for alimony pendente lite, to be computed from August 15, 1959, until final decree of the court below.