# Kaufman v. Kaufman

*Nogi, O'Malley & Harris* and *Joseph P. Kane,* for plaintiff.

*John R. Lenahan, James D. Stone* and *Walter W. O'Hara,* for defendant.

HOBAN, P. J., July 19, 1954.—The wife sued the husband for a divorce from bed and board on the ground of indignities to the person. After the first hearing at which the direct testimony of the wife was given, the husband commenced an action for absolute divorce, charging desertion. By agreement the cases were consolidated for trial and hearings resumed before Hoban, P. J. On resumption of the hearings the wife plaintiff in the action for divorce from bed and board moved to amend her complaint to include the charge that the husband maliciously turned her out of doors. The amendment was permitted.

Abraham Kaufman and Shirley Zemel were married in 1947 at the home of Shirley's parents in South Orange, N. J. They went to live at the home of the husband's parents in Carbondale, this county, and within a year discord occurred. Mrs. Kaufman became pregnant and went to the home of her parents several months before the child was born and there remained except for short trips to Carbondale under circumstances which indicated a serious rift between husband and wife.

Shirley claims the husband took no interest in the birth of the child, failed to come to see her at that time, wrote her and her mother insulting and sarcastic letters and in general expressed his complete disdain for herself and her family. Dr. Kaufman denies this and insists that the wife left for New Jersey against his advice and against the advice of her obstetrician, that for a long period he was prevented from com-

municating with his wife by her relatives, and explains his failure to go to New Jersey by fear of arrest threatened by his wife's parents. The parents deny such threats.

At any rate a partial reconciliation was arranged and Shirley returned to Carbondale in 1949. For two months Dr. Kaufman placed her in his cottage at Crystal Lake, on the plea that his own parents' home was not ready for the reception of her and the child, but later they returned to Carbondale and resumed an uneasy cohabitation.

The wife claims that the husband resumed his disdainful and insulting behavior, made threats against her life and her family, forced her to use a contraceptive device, finally withdrew from their common bedroom, took up public association with another woman, and on a number of occasions in her presence humiliated and degraded her by amorous behaviour with the other woman. Finally the doctor invited her to go home to her folks where she belonged, saying that he had no need for her; whereupon around Labor Day, 1953, she took him at his word and departed, taking the child with her.

If we can believe half of what Mrs. Kaufman says, there is ample ground for a divorce from bed and board.

Dr. Kaufman vigorously denies the wife's assertions as to threats against her safety of body or mind, denies any behavior intended to humiliate his wife, denies any but the most innocent business association with the other woman, and asserts that Mrs. Kaufman's final departure was of her own volition and against his wishes, and lays this same departure date as the beginning of her period of desertion.

There is satisfactory corroboration of the wife's story of the husband's dissatisfaction with the marriage in 1948 in the letters sent to his wife and her

mother at the time of her approaching maternity. These were deliberately sarcastic and insulting.

There is corroboration by a private detective of the doctor's public association and amorous attentions to a woman during 1951. There is corroboration from the doctor's own testimony as to his dissatisfaction with the attitude of his wife's family and herself as to financial benefits he expected to derive from the marriage. He is frank to express his disappointment at the lack of a dowry or a suitable marriage settlement, or the failure of the wife's parents to live up to his expectations. The reconciliation of 1949 was arranged only after the wife's parents had agreed to provide the couple with a complete set of household furniture and after the wife had agreed to place her separate real estate and bank accounts in their joint names. The doctor expressed shock and surprise on discovery that the deed from the wife creating an estate by entireties contained a defeasance clause in the event of divorce or separation, a precaution which hindsight seems to justify.

The doctor, while asserting his own innocence of any wrongdoing, puts the cause of the trouble on the wife's dislike for life in a small town, her inability to conform to the life of her husband as a busy general medical practitioner, and her determination to have the doctor move to New Jersey and specialize in some field of medicine which would allow them a more regular home life. The supporting evidence for Dr. Kaufman is mostly negative in character consisting of denials by domestics, employes and business associates that they observed anything untoward in the domestic life of the Kaufmans, and of course a denial by the "other woman" of any irregular association with the doctor.

Where the main evidence as to the cause of action in divorce comes from the parties themselves, we look for corroboration, and where one side presents corrob-

oration which is convincing and the other does not, it ought to prevail. The positive corroboration of the wife's story by her parents, by the letters, by the detective and by the doctor's own attitude on the financial question involved is certainly more convincing than the negative testimony of the witnesses for the husband. We are satisfied that she has made out a case.

Mrs. Kaufman's story undoubtedly contains exaggerations and discrepancies and her own behavior does not show her wholly free from fault. But the Divorce Law as to a divorce from bed and board does not require proof that plaintiff is an "innocent and injured spouse" as is the requirement in the case of absolute divorce from the bonds of matrimony. The Divorce Law of May 2, 1929, P. L. 1237, sec. 11, 23 PS §11. See also Viet v. Viet, 37 Del. Co. 213. What the wife is required to prove is that the conduct of her husband amounted to indignities to the person, and in our opinion plaintiff in this bed and board action has proved her case by clear and satisfactory evidence. If the case rested alone upon the charge that the husband maliciously turned her out of doors, it might rest on less stable ground. However, the husband's conduct justified her leaving their common home, whether it amounted to a malicious turning out or not.

Since the indignites to the person which made her life intolerable and condition burdensome justified her separation, there is a complete defense to the charge of desertion in the husband's case and his case must be dismissed.

Dr. Kaufman is a man of substantial property interests in Carbondale, has an income from investments and is a busy general practitioner of medicine with substantial earning power. As reflected by his income tax returns his earning capacity from all sources is increasing. Without disclosing the details of the doctor's financial position, which are of record, but which

are entitled to a reasonable degree of privacy, and taking into consideration the fact that Mrs. Kaufman has a separate estate, we are of the opinion that an allowance of $300 per month as alimony to the wife is a fair assessment.

Separate orders in accordance with this opinion will be entered in each case.

### Order for Judgment in November Term, 1951, No. 1122

Now, July 19, 1954, in accordance with opinion filed this day in this case, judgment is directed to be entered in favor of plaintiff and against defendant, and Shirley Zemel Kaufman is decreed to be divorced and separated only from the bed and board of her husband, Abraham J. Kaufman, and further ordered that Abraham J. Kaufman pay to his wife, Shirley Zemel Kaufman, as alimony the sum of $300 per month, subject to the provisions of section 47 of the Divorce Law, 23 PS §47.

### Order for Judgment in September Term, 1953, No. 1906

Now, July 19, 1954, in accordance with the opinion filed this day in the companion case of Kaufman v. Kaufman, to November term, 1951, no. 1122, the complaint in divorce is dismissed, and judgment is directed to be entered in favor of defendant herein, Shirley Zemel Kaufman, and against plaintiff, Abraham J. Kaufman.

### On Rule for Additional Counsel Fees and Other Expenses

HOBAN, P. J., September 10, 1954.—Plaintiff in this case petitions for an allowance of additional counsel fees and allowance for certain expenses incurred by her in the prosecution of this action, and also in her defense of the action in divorce of Kaufman v. Kaufman, to September term, 1953, no. 1906, both of which cases, by stipulation, were tried together.

We are of the opinion that considering the necessities of the case and the financial status of petitioner and respondent, the case is a proper one for allowance of necessary expenses and counsel fees. The petition includes a request for the payment to the petitioner of expenses for retaining private investigators and an accountant. These expenses, while they may have been of some advantage to plaintiff, we do not believe were necessary to the proper prosecution of her action or the defense of the action against her, and accordingly are disallowed. We, therefore, make the following

*Order*

Now, September 10, 1954, defendant, Abraham J. Kaufman, is directed to pay to plaintiff, Shirley Zemel Kaufman, as additional counsel fees the sum of $1,100 and as necessary expenses for transcript of testimony the sum of $120.70.

*On Petition for Suspension of Decree of Divorce
from Bed and Board*

HOBAN, P. J., February 1, 1955.—On July 19, 1954, this court granted a decree of divorce a mensa et thoro to plaintiff and under the provisions of section 47 of the Divorce Law entered an order allowing plaintiff alimony of $300 a month.

On October 6, 1954, defendant filed a petition averring that as of that date he has fully complied with the order for payment of alimony and other awards incidental to the litigation, that he urged reconciliation upon wife plaintiff, and in the petition made a formal offer to receive and cohabit with his wife and use her as a good husband ought to do. Thereupon a rule to show cause why the decree and the alimony should not be suspended or discharged was granted, an answer was filed and subsequently a hearing was had on the issues raised by the petition and answer. The matter of suspension or discharge of the decree is now before us.

This proceeding, while authorized by section 47 of the Divorce Law, is unusual and apparently very few cases under it have reached our appellate courts. The only two which the research of counsel and of the hearing judge have discovered are the cases of Mc-Clurg's Appeal, 66 Pa. 366, and Breinig v. Breinig, 26 Pa. 161. The gist of the decisions in the cited cases is that the court must be convinced of the bona fides or sincerity of the offer of reconciliation before it is justified in suspending the order for alimony.

Section 47 of the Divorce Law, 23 PS §47, contains this interesting phraseology:

"And then in such case the Court may either suspend the aforesaid decree or, in case of her refusal to return and cohabit under the protection of the Court, discharge and annul the same according to its discretion."

The cited cases seem to indicate that the recalcitrant wife who refused to accept a bona fide offer of reconciliation ought to be punished for her stubbornness by having the decree discharged or annulled, but nowhere in the cases do we find any indication of what protection the court is able to afford to a wife who is asked to return to a husband whose prior conduct justified her withdrawal from the home.

The sincerity of an offer of reconciliation of course cannot be evaluated solely because of the time at which it was made. An offer which is made within a comparatively short space of time after a decree of divorce has been granted obviously is open to the suspicion that it is motivated somewhat by anxiety to evade the financial burden imposed on defendant. Here defendant sought to overcome this imputation by evidence of declarations of intention made to a clergyman under circumstances of solemnity which would ordinarily indicate that a person of his religious persuasion meant what he said. This, of course, is a circumstance to be considered, but it is proof at best of a mere declara-

tion of intention on the part of defendant. Ordinarily we look to demonstrations of intent by actions. Plaintiff in this case produces evidence to show that during the period after the divorce and up to the time of hearing there was a noticeable lack on the part of defendant of the attentions which one would expect a person in his position to pay, not only to the estranged wife, but to their child, if he was really intent on reëstablishing the family relationship on a sound basis. Plaintiff points out that defendant made only a pro forma offer of reconciliation and cohabitation; he paid only two visits to his child, and that defendant's own behavior toward her was of a pattern that led her to discount any belief in his sincerity. One of the factors involved was his offer to reëstablish her in a home in which defendant's mother also lived and of which he is a part owner, thus offering to bring her back to a situation which was partially responsible for the original breach in the family relationship.

Viewing the testimony as a whole we believe that this application is premature.

As we pointed out, there is very little case law on the matter, but in an old case involving an enforcement of separate maintenance action, where an offer of reconciliation was made by the husband, the opinion writer had this to say:

"[A court] ought to be convinced not only that the offer is made in sincerity but that from the character and conduct of the man, there is a reasonable probability it will be faithfully adhered to": Directors of Poor v. Mercer, 2 Clark 75, 3 Pa. L. J. 303.

(Bell, P. J., Delaware County, 1844)

We may be pardoned a doubt that even if defendant believes himself to be sincere in this offer, he has demonstrated for our purpose the quality of character and conduct which indicates a reasonable probability that his offer to receive plaintiff back and treat her as

a husband should do, will be faithfully adhered to. More proof by conduct rather than by words seems to be required. Accordingly we will discharge the rule, without prejudice to the right of defendant to make further application after a reasonable time has elapsed and after a demonstration through conduct of his real interest in restoring the family relationship.

Now, February 1, 1955, the rule to show cause why a decree to suspend or annul decree of divorce from bed and board and order for alimony should not be suspended and discharged, is discharged.

*Opinion*

HOBAN, P. J., December 23, 1955.—This is a second proceeding under section 47 of the Divorce Law, by which the husband offers to receive and cohabit with the wife again and to use her as a good husband ought to do, asks for an order suspending the decree of a divorce a mensa et thoro and the alimony order, or in case of the refusal of the wife to return and cohabit under the protection of the court, to discharge and annul the same according to the discretion of the court.

The principles governing the disposition of such an application for suspension or annulment of a decree a mensa et thoro were discussed in our opinion of February 1, 1955, refusing defendant's prior application for relief, without prejudice.

The petition before us was filed 14 months, to the day, after plaintiff obtained a decree of divorce from bed and board and ought therefore to be considered free from the objectionable haste we noted as to defendant's first petition.

Plaintiff again challenges the bona fides of defendant's current offer, professes fear for herself and her child if she rejoin defendant in a common domicile and asserts that she cannot consent to any reunion on a tentative or conditional basis. She believes that the resumption of cohabitation can only be on the basis of

a mutual decision that plaintiff and defendant can live together as man and wife on a permanent rather than a trial basis.

But the statute by its words offers a remedy conditional in nature, and is concerned only with the bona fides of the husband's offer, regardless of the concurrence of the wife.

From the evidence we conclude that the current offer by defendant is bona fide and that he is entitled to the relief sought. While the sensitivity of the husband's approach to the problem of reconciliation may be criticized, the fact is that he has made a substantial effort to provide a home separate and apart from the home situation which was a factor in their marital troubles, and he is fully aware of the penalties which would be imposed "if he fail in performing his said offers and engagements". Mrs. Kaufman, at the hearing, rejected any offer to return to cohabitation under any protective conditions to be imposed by court, a refusal which we declined to accept as final at the time as based upon insufficient consideration. In order that the court may be sure of her mature consideration in accepting or rejecting the present offer, our decree will call for her written decision to be filed in the case within a reasonable period of time.

Accordingly we enter the following

### Decree Nisi

Now, December 23, 1955, plaintiff shall accept or refuse defendant's offer to receive and cohabit with her again and to use her as a good husband ought to do, and shall file with this court her acceptance or refusal not later than January 15, 1956.

Should plaintiff elect to accept the offer, defendant shall provide for her by February 1, 1956, a suitable home separate and apart from the home of any other members of the families of either plaintiff or defendant and thereafter the order for judgment of divorce from

bed and board and for the payment of alimony shall be suspended until further order of the court. Should plaintiff elect to refuse defendant's offer as aforesaid, a further order will be entered.

### Opinion Sur Refusal

HOBAN, P. J., January 18, 1956.—In a decree nisi, dated December 23, 1955, we directed plaintiff to file her acceptance or refusal of defendant's offer to receive and cohabit with her again and to use her as a good husband ought to do. Plaintiff has now filed her refusal to return and cohabit under the protection of the court. She has filed with her refusal a statement of reasons all of which were considered by the court upon the hearing and before entering our decree nisi. Under the circumstances we have no option but to enter the following

### Final Decree

Now, January 18, 1956, the decree of this court filed July 19, 1954, divorcing and separating Shirley Zemel Kaufman only from the bed and board of her husband, Abraham J. Kaufman, and ordering the said Abraham J. Kaufman to pay alimony to Shirley Zemel Kaufman is hereby discharged and annulled.