Rutherford *v.* Rutherford, Appellant.
Rutherford, Appellant *v.* Rutherford.

518

Argued May 3, 1943. Before Keller, P. J., Baldrige, Stadtfeld, Rhodes, Hirt, Kenworthey and. Reno, JJ.

*William N. Ottinger,* for appellant.

*Gilbert Cassidy, Jr.,* for appellee.

Opinion by Keller, P. J., July 16, 1943:

These four appeals by Clinton S. Rutherford from Court of Common Pleas No. 1 of Philadelphia County grew out of cross actions of divorce.

No. 50 is from the decree dismissing his libel for divorce from the bond of matrimony.

No. 60 is from an order for the payment to his wife,

Amy B. Rutherford, of $2,500 additional counsel fee and $1,000 expenses.

No. 213 is from an order for the payment to his wife of $750 counsel fee and $250 expenses, on appeal.

No. 239 is from the decree granting his wife a divorce from bed and board, and awarding her permanent alimony of $150 per month for her support and maintenance.

The history leading up to the appeals is as follows:

On January 30, 1939 Amy B. Rutherford filed her libel to No. 17 March Term 1939 asking for divorce from *bed and board* on the grounds of (1) cruel and barbarous treatment endangering her life and (2) indignities to her person, such as to render her condition intolerable and life burdensome. On March 29, 1939, by leave of court, she amended her libel by adding adultery as a third ground for divorce, and a prayer for the allowance of permanent alimony.

On March 30, 1939, the husband, Clinton S. Rutherford, filed his libel in Common Pleas No. 4, to No. 2153 March Term 1939, asking for a divorce from the *bond of matrimony,* on the grounds of (1) personal indignities and (2) adultery.

On May 22, 1939, the two actions were consolidated for hearing and trial, and docketed thereafter under No. 17 March Term, 1939.

Orders were made on the husband to pay his wife a counsel fee of $35 in each case and alimony pendente lite of $225 a month beginning March 1, 1939.

By reason of various delays, for which the wife was chiefly responsible, a master was not appointed to take the testimony and report findings to the court until November 28, 1939.

Sixty-three meetings were held by the master between December 13, 1939 and January 31, 1941, at which 3760 typewritten pages of testimony were taken, besides Letters Rogatory to New York and Commissions

to San Francisco, California and Sioux Falls, South Dakota; and several other meetings were held for the examination of checks—in our opinion, a wholly unnecessary proceeding. It is another striking example of the abuses in divorce proceedings referred to by us in *McDevitt v. McDevitt*, 148 Pa. Superior Ct. 522, 523-4, 25 A. 2d 853, and *Lowe v. Lowe*, 148 Pa. Superior Ct. 439, 441-2, 25 A. 2d 781. The meetings were strung out by unnecessary and immaterial cross-examinations, and much irrelevant, immaterial and hearsay matter was included in the record. In our opinion, both parties were at fault. Confined to relevant and material testimony the cases could have been heard in court before a judge in two or three days time—not longer than it takes to *read* this over-swollen record.

On May 21, 1941 the master filed his findings and report recommending that the libel filed by Clinton S. Rutherford against his wife be dismissed; and that a decree of divorce *a mensa et thoro* be entered in favor of Amy B. Rutherford against her husband, Clinton S. Rutherford. He further recommended that the respondent, Clinton S. Rutherford, be ordered to pay Amy B. Rutherford permanent alimony in the amount of $750 a year, in equal monthly installments of $62.50 in advance, said payments to continue until a reconciliation shall take place between the parties.

The master's findings and report exonerated each respondent from the charges made in the respective libels as grounds for the divorce asked. But from the following averment appearing in the wife's libel, relative to the jurisdiction of the Court of Common Pleas of Philadelphia County,—the parties having resided in Ardmore, Montgomery County, prior to January 20, 1939—"The libellant became domiciled in the County of Philadelphia having been forced to leave Ardmore, Penna., because of the conduct of the respondent and came to Philadelphia to make her home

with her sister", the master, being satisfied that the parties could not thereafter live together amicably, recommended that a divorce from bed and board be granted the wife, because of a *constructive turning out of doors,* under section 11(b) of the Divorce Code of 1929, P. L. 1237, which authorizes a divorce from bed and board whenever it shall be adjudged that libellant's husband has "maliciously turned her out of doors"; although his *findings* negatived any such action by the respondent, and were to the effect that the wife left the family dwelling notwithstanding his requests to her to stay.

Exceptions were duly filed to the master's report and findings by Clinton S. Rutherford, and, by leave of court extending the time for filing, by Amy B. Rutherford.

Exceptions were also filed by both parties to a supplemental report filed by the master on June 5, 1941, which made several additional findings and conclusions.

We have searched through the voluminous original record in this case and find no written opinion or order by the court below disposing of these exceptions, either filed separately or endorsed on the papers. Nothing more than the following *docket entries:*

"May 28, 1941. Exceptions of Clinton S. Rutherford as respondent in first case and as the libellant in the second case to the master's report.

"Sept. 16, 1941. Exceptions dismissed.

"June 9, 1941. Exceptions of Clinton S. Rutherford to master's supplemental report filed.

"Sept. 16, 1941. Exceptions dismissed.

"June 14, 1941. Exceptions of Amy B. Rutherford to master's report filed.

"Sept. 16, 1941. Exceptions sustained.

"June 16, 1941. Supplemental exceptions of Amy B. Rutherford to master's report filed.

"Sept. 16, 1941. Supplemental exceptions sustained.

"Sept. 16, 1941. The libel of Clinton S. Rutherford is dismissed. The prayer of the libel of Amy B. Rutherford is granted. Support to be based upon depositions in re earning capacity of Clinton S. Rutherford and to be taken forthwith."

The record does not show what exceptions of Mrs. Rutherford were sustained, or on what ground or grounds the divorce from bed and board was granted.

In the meantime on June 4, 1941, the wife obtained a rule on the husband to show cause why additional counsel fees, costs and expenses should not be awarded her, which on July 1, 1941 was made absolute, and an additional counsel fee of $2,500 and expenses in the sum of $1,000 awarded her.

On November 25, 1941, the husband obtained a rule on the wife to show cause why the order of July 1, 1941 for additional counsel fee and expenses should not be reconsidered.

On December 12, 1941, the above rule was discharged and the husband granted fifteen days to make payment in full.

The same day the wife's permanent alimony was fixed at $150 a month to date from December 15, 1941.

On December 15, 1941, Clinton S. Rutherford appealed to this court (No. 50 October Term 1942) from the decree dismissing his libel.

On December 23, 1941, he appealed from the order to pay additional counsel fee and expenses and the discharge of the rule to reconsider the same (No. 60 October Term 1942).

On April 15, 1942, the wife obtained a rule to show cause why the husband should not be held in contempt of court for his failure to pay the additional counsel fee and expenses under order of July 1, 1941.

On April 18, 1942 a petition asking for supersedeas in No. 60 was filed in this court, on which, on April 21, 1942, we granted a rule to show cause, returnable in

ten days, proceedings to be stayed pending disposition of the rule; and on May 4, 1942 we entered an order that the appeal should operate as a supersedeas on the filing of a bond in the sum of $7,000, to be approved by the court below; and we further directed that a *decree* should be promptly entered in the divorce suit brought by the wife, so that all three appeals could be heard together.

On April 17, 1942 the court below made absolute the rule on Clinton S. Rutherford to show cause why he should not be held in contempt and ordered attachment to issue.

On May 16, 1942 the wife obtained a rule on her husband for counsel fees and expenses *on appeal,* which the court below made absolute on May 26, 1942 in the sum of $750 for counsel fee and $250 for expenses; and the same day the court adjudged Clinton S. Rutherford in contempt and committed him to the county prison.

On May 28, 1942, Clinton S. Rutherford filed approved bond in the court below in the sum of $7,000 as directed by this court, and the same day he was ordered released from custody by the court below.

On June 11, 1942, Clinton S. Rutherford appealed to this court (No. 213, October Term 1942) from the order of May 26, 1942 for counsel fee and expenses on appeal; and this court, by orders dated June 20, 1942 and July 8, 1942, directed that the appeal should operate as a supersedeas without the filing of an additional bond, on condition that the appellant and his surety execute and file in the court below an agreement that said bond of $7,000 filed May 28, 1942 should operate as security in both appeals, to-wit, Nos. 60 and 213, which was done.

On June 26, 1942, a final decree of divorce from bed and board was granted Amy B. Rutherford, with permanent alimony fixed at $150 per month.

On July 6, 1942, Clinton S. Rutherford appealed from said decree to this court to No. 239 October Term 1942.

Argument of the appeals was continued from the Philadelphia Session to the Pittsburgh Session and leave granted to use the original notes of testimony and record,—except the master's report, which was ordered printed.

On February 6, 1943, Clinton S. Rutherford died, and suggestion to that effect was filed in this court on March 2, 1943.

The appeals were argued at Pittsburgh on May 3, 1943.

### APPEALS NOS. 50 AND 239.

These appeals abated by the death of the appellant. We held in *Upperman v. Upperman,* 119 Pa. Superior Ct. 341, 181 A. 252, that an appeal by a wife (respondent) from a decree of divorce granted her husband, on the ground of indignities to his person, did not abate by her death after the argument of the appeal; and we reversed the decree of the court below, and held that the right of the husband to a divorce had not been established by the evidence in the record. Property rights, were involved in that case. However, we recognized in that opinion that an appellate court cannot, after the death of a libellant in a divorce action, enter a decree that *he or she shall be divorced* from his or her spouse, where the court below had refused to enter a decree divorcing them. And in *Sheinker v. Sheinker,* No. 8, October Term 1941 (not reported) where the respondent, appellant, died after the argument of his appeal from a decree granting his wife a divorce from the bond of matrimony, we filed an order abating the appeal.[1]

---

[1]—"And now, January 24, 1942, the court having been informed by counsel for both parties, who argued the above appeal on October 23, 1941; that Abraham Sheinker, the appellant, died on December 21, 1941, and there being no special property rights involved which would call for action by this court (see

We have, after the death of a libellant, *vacated and set aside* a decree of divorce which he had obtained by fraud (*Fleming v. Fleming,* 83 Pa. Superior Ct. 554), but we have never ordered a decree to be issued in favor of a deceased libellant, who had been refused a divorce by the court below.

The death of Clinton S. Rutherford, during the pendency of his appeal, put an end to his action.

With respect to No. 239, the master found that Mrs. Rutherford had not established by clear and satisfactory evidence that her husband had by cruel and barbarous treatment endangered her life, or had offered such indignities to her person as to render her condition intolerable and life burdensome, or had committed adultery, which were the grounds for divorce averred in her libel. We are not in accord with his finding and conclusion that she had impliedly *charged in her libel* that her husband had maliciously turned her out of doors, or that she had established, by clear and satisfactory evidence, *that* ground for divorce from bed and board. The ground, '*maliciously turned her out of doors*' recited in section 11(b) of the Divorce Code means just what it says. It does not embrace a departure by the libellant from the family dwelling of her own accord—and against the respondent's protest— in consequence of suspicions of misconduct on his part; and the subsequent occurrence, referred to in the master's supplemental report, did not justify the finding, either. But it is bootless to argue the point, for the appellant's death abates his appeal. Mrs. Rutherford had not asked for a divorce from the bond of matrimony. She asked and was granted a divorce from bed and board, which is little more than an adjudication that she could live apart from her husband without being guilty of desertion. She still remained his wife.

Upperman v. Upperman, 119 Pa. Superior Ct. 341, 352), both of said counsel concurring, the appeal is abated."

If the decree were reversed, she would still be his wife. Hence appellant's death before the argument and decision of the appeal abated it.

APPEAL NO. 60.

This appeal must be quashed. The order appealed from was entered July 1, 1941. It was not interlocutory; it was final. The fact that the appellant was held in contempt of court and imprisoned for several days because of failure to comply with it, shows the final character of the order. Judge Porter—afterwards President Judge—in *Lynn v. Lynn,* 68 Pa. Superior Ct. 324, 327, an appeal from a like order, said: "It is contended on the part of the appellee that this appeal cannot be sustained, for the reason that the order was one within the discretion of the court and is not reviewable, but the authorities above cited clearly establish the principle that such an order may be inquired into for the purpose of ascertaining whether there has been an abuse of discretion. In so far as the money to be paid under such an order is involved, the order is final; if the respondent pays it he can never recover it back. It would seem manifest that an abuse of discretion in such a case ought to be reached in order to effectuate justice." See also, *Gould v. Gould,* 95 Pa. Superior Ct. 387, 388.

An *order to pay* counsel fees and expenses is distinguished in this respect from an order *refusing them.* See *Murray v. Murray,* 78 Pa. Superior Ct. 443. An appeal does not lie from an order refusing counsel fees, expenses or alimony, until a final decree has been entered in the divorce action. "Such an order is in no sense final; it can be excepted to but cannot be reviewed until a final decree has been entered in the divorce proceedings and the appeal is properly before this court." Ibid, p. 445. See also *Boerio v. Boerio,* 134 Pa. Superior Ct. 501, 502, 4 A. 2d 614.

The appeal in this case was not taken until December

23, 1941, six months, all but eight days, after the entry of the order. The appeal, in order to be reviewable, had to be taken within three months: Act of May 11, 1927, P. L. 972. The petition to reconsider the order of July 1, 1941 was not filed until November 25, 1941, almost five months thereafter. At the time it was filed the order to pay was absolute and a petition to reconsider it, filed after the time within which it could be appealed, could not extend the time for an appeal. Had it been filed within three months, and an order been obtained to stay the proceedings pending the consideration of the rule, it would have been different. See *Bobbitt's Est.*, 131 Pa. Superior Ct. 386, 389, 200 A. 279; *Frazier's Est.*, 7 Pa. Superior Ct. 473, affirmed 188 Pa. 415, 41 A. 528; *Barlott v. Forney*, 187 Pa. 301, 303, 41 A. 47; *Conboy v. First Natl. Bank*, 203 U. S. 141.

### APPEAL NO. 213.

This appeal is in a different situation from the others. It brings up for review the order of May 26, 1942, for payment of counsel fee and expenses on appeal, aggregating $1,000. We realize that the matter was one resting largely in the discretion of the lower court, but are of opinion that certain material matters in the case were apparently overlooked by the court below and that in the light of them the order was an abuse of discretion. See *Lynn v. Lynn*, 68 Pa. Superior Ct. 324, p. 327.

The parties were married on February 16, 1914 and lived together as husband and wife until January 20, 1939, when the wife left the family abode in Ardmore and went to live in Philadelphia. The husband held a responsible position as Eastern Manager for the sales department of a large California corporation, which paid him a salary of $7,200 a year, at the time his wife left him, and which required his traveling about a great deal, his expenses being reimbursed to him by his employer. For many years before she left him he gave

his wife an allowance of $200 a month—or rather, $100 semi-monthly. He paid the maid's wages, the rent, fuel, light and all the household and traveling expenses, insurance for her as well as himself, and all other expenses except the item of food for herself and the maid, when he was away, and she was not with him. Out of this allowance she had accumulated, when she left him, a bank balance of about $9,000 in the Land Title Bank & Trust Company, and shortly thereafter received $2,000, the proceeds of a matured endowment life policy on which he had paid all the premiums, which she put in the Western Savings Fund. She had besides certain other securities. Her separate estate exceeded his. On January 27, 1939 she drew out of the Corn Exchange National Bank where her husband had his individual bank account, practically the entire balance, $300. He had given her authority to draw checks against this account, but she had never previously done so. All the deposits had been made by him individually, and were his money.

Beginning March 1, 1939, she was paid by him alimony *pendente lite* of $225 per month. Permanent alimony of $150 per month was decreed to her as of December 15, 1941. Thus, for thirty-three months she received $75 a month more than the amount fixed by the court as proper for her permanent alimony, or a total of $2,475 in excess of what she would have received by way of *permanent* alimony for her own support and maintenance. One of the purposes in fixing alimony *pendente lite* is to award the wife money with which to meet her *expenses* in connection with the litigation, until a final decree is entered, and her permanent alimony is fixed under the decree for divorce from bed and board.

The early cases on which the practice rests all refer to her *necessity* for support. "When the wife has no separate support, she must be subsisted, and her neces-

sary costs paid, pending proceedings for divorce. This rule is necessary; otherwise she might be denied justice for want of the funds required for the vindication of her rights": *Graves v. Cole,* 19 Pa. 171, 173. "It has been the uniform practice to allow a wife destitute of a separate estate, who is either suing or defending a case of divorce, such reasonable sum as will enable her to carry it on. She cannot sue *in forma pauperis,* for she is not a pauper if she is the wife of a man who has property. To deny her the means of paying for process and professional aid is to deny her justice": *Breinig v. Breinig,* 26 Pa. 161, 165; *Powers' Appeal,* 120 Pa. 320, 328, 14 A. 60. "It is undoubtedly the duty of the court to make a proper allowance to the wife, if she be not herself of sufficient ability, to enable her to maintain or defend her suit, having regard to the ability of her husband": *Waldron v. Waldron,* 55 Pa. 231, 235.

In the present case the wife had an estate of her own largely derived from his gifts; she had received alimony pendente lite in excess of the permanent alimony awarded her by the court of $2,475. She had delayed entering her final decree until admonished by this court to do so. She will receive $2,500 for additional counsel fees and $1,000 for expenses. With the $2,475 received by her, over and above the amount awarded her as permanent alimony, she will have received $5,975 which should be applicable to the payment of her counsel fees and expenses in the divorce proceedings. Her husband had to pay all the costs of the master, the notes of testimony, etc., besides his own counsel fees. His financial circumstances were not such as to put this case in the class of *Lynn v. Lynn,* 76 Pa. Superior Ct. 428, *Hartje v. Hartje,* 39 Pa. Superior Ct. 490, and similar cases where the husband was a man of great wealth. In our opinion, in these circumstances, to allow the wife $1,000 more on this appeal ($750 counsel fee and $250 expenses) would be a clear abuse of discre-

tion. The husband's obstreperous conduct, in the closing meetings before the master, was reprehensible and should not have occurred. It would not have occurred if the case had been heard in court before a judge. But his misconduct in this respect is not ground for this additional allowance to his wife. He could have been disciplined in other ways.

No. 50.  The appeal is abated.

No. 60.  The appeal is quashed.

No. 213.  The order is reversed.

. No. 239.  The appeal is abated.

Three-fourths of costs on appeal to be paid by appellant, or his legal representative; one-fourth by appellee.