**In re the Marriage of Sue Ellen BONE, Petitioner, Appellant,**

v.

**Larry Sidney BONE, Respondent.**

**No. C3–88–2519.**

Court of Appeals of Minnesota.

April 18, 1989.

Richard D. Goff, Goff, Kaplan & Wolf, P.A., St. Paul, for petitioner, appellant.

Duane E. Arndt, Arndt & Benton, P.A., Minneapolis, for respondent.

Heard, considered and decided by CRIPPEN, P.J., and HUSPENI and SCHULTZ,* JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.

Appellant wife seeks review of the trial court's amendment to the judgment and decree concerning payment of her medical insurance premiums and attorney fees. Both parties seek attorney fees on appeal.

## FACTS

The parties' stipulated judgment of dissolution was entered in September 1987. Six months later, appellant filed motions in response to respondent's notice to her of his impending remarriage. Respondent cross-motioned. The motions in issue on appeal concern the original decree's provisions for health insurance for appellant and attorney fees.

The provisions in issue of the original decree provide:

5. *Debts.* Each party shall be responsible for and pay their own indebtedness.

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

6. *Attorney's Fees.* Each party shall be responsible for and pay his or her own attorney's fees and costs in this matter.

7. *Medical Insurance for [Appellant].* Respondent shall continue to provide health insurance coverage for [appellant] through his employer to the extent he is able to do so in accordance with the provisions of Minn.Stat. § 62A.21, Subd. 2A and/or federal law commonly known as COBRA. This coverage shall be continued for a period of at least three years from the date of this Decree or such longer time as M.S.A. § 62A.21 and/or COBRA permits.

Any required additional premium contributions for the coverage for [appellant] shall be paid by respondent to the insurer. Respondent shall notify [appellant] in writing not less than 30 days prior to his remarriage, or as soon as he learns of a proposed termination of the group insurance plan by his employer in order to allow [appellant] the opportunity to convert said coverage to an individual policy within the 30 day conversion period allowed by statute. At such time as respondent's obligation to provide medical insurance coverage for [appellant] terminates, [appellant] shall thereafter be solely responsible for the cost of her own medical insurance coverage, and respondent shall have no further obligation to contribute any amount toward the cost of [appellant's] health insurance. Respondent shall cooperate with the [appellant] in the submission of any claims for [appellant] and in the conversion of group coverage to individual coverage when appropriate. If the respondent remarries within three years from the date of this Decree, then to the extent that there are inconsistent provisions between the state and federal law as it applies to said insurance for [appellant], the federal law shall prevail.

In March 1988, respondent notified appellant of his intention to remarry in June. His letter indicates that appellant's medical coverage would terminate 30 days after his remarriage. Appellant then moved the court requesting enforcement of the health provision of the original divorce decree. In turn, respondent asked that the court grant him $1,500. His motion was based on the fact that before the couple was separated, appellant removed $1,500 from a joint account to pay her attorney. The withdrawal created an overdraft which was assumed by a credit card. He theorized that due to paragraph 6 in the decree requiring each party to pay his/her own attorney fees, he is entitled to that amount. The amount was not specifically mentioned in the stipulated judgment and decree, although respondent continues to pay off the debt.

The trial court made findings of fact and ordered, among other things:

2. That [Appellant] is entitled to continuation of insurance coverage under Respondent's policy for 36 months following the parties' dissolution under the provisions of COBRA.

That [Appellant] is required to pay the cost of a continuation plan which can be no more than 102 percent of the total cost of providing the same coverage for the active employee. At the end of 36 months, [Appellant] will have to apply for a conversion plan.

3. That [Appellant] shall pay Respondent $1,500.00 as reimbursement for attorney's fees and costs taken from the parties' joint account.

4. That each party shall pay their own attorney's [sic] fees and costs in this matter.

On appeal, appellant maintains that the trial court's actions amounted to an improper modification of the decree by eliminating respondent's obligation to pay for her health insurance and ordering her to repay the amount she withdrew from their joint account. Both parties request attorney fees on appeal.

## ISSUES

1. Whether the trial court erred in determining that appellant must pay for her health insurance upon respondent's remarriage?

2. Whether the trial court erred in requiring appellant to remit to respondent

the amount withdrawn from a joint banking account for attorney fees?

## ANALYSIS

1. Appellant maintains that the trial court's order concerning the health insurance premiums is contrary to the language of the original decree.

■ The trial court's findings of fact concerning the stipulated judgment will be upheld unless they are clearly erroneous. Minn.R.Civ.P. 52.01. While the trial court may interpret a decree, the clarification must accurately express the thoughts the decree intended to convey. *Thompson v. Thompson*, 385 N.W.2d 20, 22 (Minn.Ct. App.1986).

■ The provisions of section 7 of the judgment and decree are inartfully drafted. However, the first paragraph clearly concerns the extent of coverage, while the second paragraph provides a formula concerning which party is responsible for payment. When read together, the paragraphs indicate respondent is required to pay the premiums until the cited statutes disqualify appellant from receiving continuation benefits. Minn.Stat. § 62A.21 provides in part:

CONVERSION PRIVILEGES FOR INSURED FORMER SPOUSES AND CHILDREN.

Subdivision 1. No policy of * * * health insurance * * * shall contain a provision for termination of coverage for a spouse covered under the policy solely as a result of a break in the marital relationship.

Subd. 2a. **Continuation privilege.** Every policy described in subdivision 1 shall contain a provision which permits continuation of coverage under the policy for the insured's former spouse * * * upon entry of a valid decree of dissolution of marriage. The coverage shall be continued until the earlier of the following dates:

(a) The date the insured's former spouse becomes covered under any other group health plan; or

(b) The date coverage would otherwise terminate under the policy.

If the coverage is provided under a group policy, any required premium contributions for the coverage shall be paid by the insured on a monthly basis to the group policyholder for remittance to the insurer. In no event shall the amount of premium charged exceed 102 percent of the cost to the plan for such period of coverage for other similarly situated spouses * * * with respect to whom the marital relationship has not dissolved, without regard to whether such cost is paid by the employer or employee.

Subd. 2b. **Conversion privilege.** Every policy described in subdivision 1 shall contain a provision allowing a former spouse * * * of an insured, without providing evidence of insurability, to obtain from the insurer at the expiration of any continuation of coverage required under [sections concerning continuation of benefits to survivors and benefits to new spouses], conversion coverage providing at least the minimum benefits of a qualified plan * * * provided application is made to the insurer within 30 days following notice of the expiration of the continued coverage and upon payment of the appropriate premium. A policy providing reduced benefits at a reduced premium rate may be accepted by the former spouse * * * in lieu of the optional coverage otherwise required by this subdivision. The individual policy shall be renewable at the option of the former spouse as long as the former spouse is not covered under another qualified plan as defined in section 62E.02, subdivision 4, up to age 65 or to the day before the date of eligibility for coverage under Title XVIII of the Social Security Act, as amended. * * *

Minn.Stat. § 62A.21 (Supp.1987). The statute does not contain a termination event applicable to appellant. Therefore, the federal statute controls due to the parties' agreement to that effect. That statute provides in part:

[A] group health plan meets the requirements of this subsection only if each qualified beneficiary who would

lose coverage under the plan as a result of a *qualifying event* is entitled to elect, within the election period, continuation coverage under the plan.

(2) **Continuation coverage.** * * * "continuation coverage" means coverage under the plan which meets the following requirements:

(A) **Type of benefit coverage.**—The coverage must consist of coverage which, as of the time the coverage is being provided, is identical to the coverage provided under the plan to similarly situated beneficiaries * * * with respect to whom a qualifying event has not occurred. * * *

(B) **Period of coverage.**—The coverage must extend for at least the period beginning on the date of the qualifying event and ending not earlier than the earliest of the following:

(i) **Maximum required period.—**

\* \* \* \* \* \*

(IV) **General rule for other qualifying events.**—In the case of a qualifying event not described in paragraph (3)(B) or (3)(F), the date which is 36 months after the date of the qualifying event.

\* \* \* \* \* \*

(C) **Premium requirements.—**\* \* \*

(i) shall not exceed 102 percent of the applicable premium for such period \* \* \*.

(3) **Qualifying event.—**\* \* \* the term "qualifying event" means \* \* \*

(C) The divorce \* \* \* of the covered employee from the employee's spouse.

26 U.S.C.A. § 162(k) (1986) (also known as COBRA) (emphasis added). This statute indicates that a spouse is entitled to coverage until a disqualifying event occurs. Then the spouse is entitled to additional continuation coverage; the length depends on the nature of the disqualifying event.

In this case, appellant's disqualifying event is her divorce from respondent. She is therefore entitled to 36 months of continuation coverage. Following those 36 months, she has 30 days in which to obtain conversion coverage. In contrast to what is implied by the divorce decree, this right is not affected by the insured's remarriage. The 36–month coverage period complies with the three years of coverage required by the first paragraph of section 7 of the judgment and decree. Because appellant is allowed 36 months of continuation coverage before she is required by statute to convert, paragraph two of section 7 requires respondent to pay for this period of coverage. Appellant may then elect to convert the coverage, and would be required to assume payment of the premiums.

2. Appellant also maintains the trial court erred in ordering her to replace the amount she withdrew from a joint account to pay her attorney. She argues that the repayment of the overdraft was a part of the property division and therefore final, not subject to amendment. Respondent maintains that the order is merely a reinforcement of the original mandate requiring each party to be responsible for their own fees.

▮ Debts are apportionable as part of the property settlement. *Filkins v. Filkins,* 347 N.W.2d 526, 529 (Minn.Ct.App. 1984). Property divisions are final upon expiration of the 90–day appeal period. *Angier v. Angier,* 415 N.W.2d 53, 55 (Minn. Ct.App.1987). However, attorney fees incurred in a dissolution are not part of the marital estate, and thus are not apportionable as property in a property settlement. *Filkins,* 347 N.W.2d at 529. The trial court has wide discretion in awarding attorney fees at that level. *Deliduka v. Deliduka,* 347 N.W.2d 52, 57 (Minn.Ct.App.1984).

▮ In our view, the trial court improperly amended a property settlement. At the time of entry of the stipulated judgment and decree, the amount paid to an attorney had long been reduced to a debt on a credit card. Had the parties or the trial court intended to provide for this $1,500 payment, the decree should have specifically addressed that issue. The record indicates respondent first requested reimbursement from appellant during his response to appellant's medical insurance motion. That motion was noticed over six months after the entry of the stipulated

judgment and decree, well beyond the expiration of 90 days. The debt was part of the final property settlement and not subject to later amendment.

## DECISION

The trial court clearly erred in ordering appellant to assume payment of medical insurance premiums before the expiration of her continuation coverage period. The trial court's grant of respondent's request for reimbursement of attorney fees improperly amended a final property settlement. Neither party is entitled to fees on appeal.

Reversed.