**Riggle v. Riggle**

*Kevin Barron,* for plaintiff.
*Paige Peasley,* for defendant.
*James Richardson,* for additional defendant.

JIULIANTE, *J.,* July 13, 1989 — This matter, which appears to present an issue of first impression in Pennsylvania, is before the court on defendant/petitioner's motion for special relief and joinder of additional party. The motion for special relief requests a resolution of health care insurance issues pursuant to the Consolidated Omnibus Budget Reconciliation Act of 1985 (hereinafter COBRA), Pub.L. 99-272, 100 Stat. 222 (1986). See also, 26 U.S.C. §162(k); 2 U.S.C. §1161; 42 U.S.C. §30066-1.

The parties are husband and wife and were married on December 21, 1963. On or about November 24, 1987, plaintiff filed the instant divorce action.

Plaintiff is currently employed through National Forge which provides family health care coverage as a benefit. Defendant's employer provides no health care coverage for her. On April 25, 1988, an agreement for order of support was signed by both parties. Said agreement was then entered as an order of court that same day requiring plaintiff to provide health care coverage for defendant.

In December 1988, defendant learned that she would need X-rays and other medical services. Accordingly, she contacted a representative from the Benefit Coordinators Corporation through National Forge Company. This representative assured defendant/petitioner that there was hospitalization coverage for her through National Forge.

On or about December 22, 1988 defendant/petitioner incurred medical expenses of approxi-

mately $1,000, which included X-rays and prescription costs. Subsequently, the petitioner submitted these bills through the National Forge insurance. In January 1989 she received a rejection slip from National Forge stating that the charges were incurred after termination of her health care coverage. Petitioner then learned that National Forge had terminated her hospitalization benefits effective December 1, 1988.

Petitioner was never notified of this termination until receipt of the rejection slip dated January 31, 1989. Petitioner believes that plaintiff was also not notified of the termination.

It is National Forge's position that their hospitalization program does not provide for coverage of a spouse if the spouse and employee are separated. Accordingly, it is National Forge's position that it is not obligated to provide coverage for the petitioner and is not responsible for her outstanding medical bills.

Pursuant to the National Forge medical plan, employees may cover dependents unless the employee spouse is "legally separated." Also under this medical plan, a spouse of an employee will be eligible for up to 36 months of continued coverage if the coverage would otherwise end due to divorce or legal separation. This continuation term is pursuant to COBRA.

Under COBRA, as found at 26 U.S.C. § 162, section 101 et seq., a "qualifying event" which may result in loss of coverage includes divorce or "legal separation" of the dependant spouse from the employee spouse. Under section 1001(a)(6)(d), in the event of a "qualifying event" as described above, the plan administrator shall notify a qualified beneficiary of possible termination and must notify the

qualified beneficiary with respect to the beneficiary's right to elect to continue coverage pursuant to the COBRA laws.

It is petitioner's position that coverage to her must continue pusrsuant to COBRA and the company's plan as the parties are not yet divorced or "legally separated" as Pennsylvania does not recognize a state of legal separation. In the alternative, it is also petitioner's position that she was not given proper notice of the termination of her coverage in order to allow her to exercise her right to elect to continue coverage. In the event this court should find that the parties are "legally separated" and the company is not responsible for continuing the petitioner's coverage, the petitioner requests that this court find that the plaintiff/respondent is responsible for providing alternate health care coverage and for payment of her outstanding medical bills pursuant to the court order of April 25, 1988.

Preliminarily, the issue of whether National Forge Company may be joined as an additional party must be resolved. The National Forge Company disputes joinder on the basis that the company has no interest in any property that is the subject matter of distribution between the parties.

This court disagrees and finds that joinder in this action is proper. Pennsylvania rule of Civil Procedure 1920.34 regarding the joinder of parties in an action for divorce states as follows:

"At any state of an action, the court may order the joinder of an additional person who could have joined or been joined in the action and may stay the proceedings in whole or in part until such person has been joined. This action may proceed although such person has not been made a party if jurisdiction of him cannot be obtained and he is not an indispensable party to the action."

The explanatory note to the above-stated rule provides some additional clarification:

"The joinder of persons other than husband and wife may be essential in claims for child custody where neither has custody or custody is claimed by others or where a person other than the parties have an interest in property which is the subject matter of distribution."

National Forge points to the last portion of this explanatory note to bolster its argument that joinder is not permissible. A closer review of that explanatory note and the circumstances of this case, however, reveals that such language directs this court to grant petitioner's request to join National Forge.

It has been long held by the courts of this commonwealth that employee benefits, including medical coverage, are in the nature of property rights which must be considered in equitable distribution, alimony and other economic issues of a divorce proceeding. By inappropriately terminating the medical benefits, National Forge has, in effect, interfered with this property right contrary to law.

Pennsylvania Rule of Civil Procedure 1920.43 also gives a court in a divorce proceeding unlimited power to grant the parties special relief as a court may deem just. The Divorce Code itself also speaks to the court's power and responsibility to protect the parties in a divorce action and to effect justice:

"In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions and other orders which are necessary to protect the interests of the parties or to effectuate the purposes of the act, and may grant such other relief or remedy as equity and justice require against either party against any third party over whom the

court has jurisdiction and who is involved in or concerned with the disposition of the cause." 42 Pa.C.S. §401(c).

National Forge's request to this court that the petitioner file an action of law for compensatory damages or declaratory judgment not only contradicts the intent and explicit terms of the Divorce Code and Pennsylvania Rules of Civil Procedure governing divorce actions, but would result in an unnecessary waste of this court's time and the parties' resources.

Finally, National Forge notes that petitioner's claim is pursuant to her support order, thus disallowing her request for joinder. Pennsylvania Rule of Civil Procedure 1920.31 allows the joinder of related claims through a divorce proceeding including joinder of a spousal support claim. In fact, divorce and support are not distinct actions and this court on numerous occasions has consolidated all economic and ancillary issues under one proceeding.

Pursuant to the Rules of Civil Procedure and the Divorce Code, this court finds that joinder of National Forge Company as an additional party is proper for the purposes of litigating the health care insurance issues and will so order.

The next issue is whether this court should order the National Forge Company to reinstate petitioner's medical insurance retroactive to December 1, 1988 and to continue such coverage until the parties are divorced. National Forge argues that the company was justified in terminating the petitioner's coverage when it learned that the parties were separated as "legal separation" is a qualifying event under COBRA. Petitioner contends that because Pennsylvania does not recognize the state of legal separation, the qualifying event must be the parties' divorce.

The courts of this commonwealth apparently have not as yet decided this issue. Because of the far-reaching implications this decision may have, a careful analysis of existing law in this and other jurisdictions is in order.

Former Pennsylvania practice permitted the institution of a complaint for divorce a mensa et thoro, or from bed and board, which was not a divorce at all but was a legal separation. Act of May 2, 1929, P.L. 1273 S11; 23 P.S. §11 (repealed April 2, 1980). It was available only to women. It was not necessary for the wife to prove that she was "innocent and injured" as she was required to do to obtain a divorce. *Wick v. Wick*, 352 Pa. 25, 42 A.2d 76 (1945).

If the wife could meet her burden of proving the husband's marital misconduct, she was entitled to a decree of "divorce from bed and board." This provided her with a variety of forms of relief from the marital relationship, although the marriage itself remained legally intact. A decree in divorce from bed and board established in the wife a legal right to live separate and apart from her husband without becoming guilty of desertion. *Rutherford v. Rutherford*, 152 Pa. Super. 517, 22 A.2d 921 (1943). This was of key importance because, if she gave her husband the ability to divorce her, she would have no further right to seek support for herself because Pennsylvania had no provision for post-divorce alimony at that time. In addition, he could never get a divorce in Pennsylvania because he lacked "innocent and injured spouse" status.

A decree of divorce from bed and board gave the wife the right to seek the entry of a court order for alimony or support for herself and any minor children in her care. It freed her from the obligation to provide sex and other services to her husband.

However, it had no effect on the ownership, possession or control of property.

In 1973, Pennsylvania's bed-and-board provisions were ruled unconstitutional because they violated the state's Equal Rights Amendment. *Wiegand v. Wiegand,* 226 Pa. Super. 278, 310 A.2d 426 (1973). The *Wiegand* decision preceded the Supreme Court's decision in *Orr v. Orr,* 440 U.S. 268, 99 S. Ct. 1102, 59 L.Ed.2d 306 (1979), which changed all sex-based state laws when it held that the Fourteenth Amendment of the Constitution required equal treatment of men and women with regard to the payment of alimony and support.

It was possible for parties to be "legally" separated before 1973 pursuant to a separation agreement. If the husband vacated the marital residence, the wife could, under various criminal and civil support laws, obtain court-ordered support without filing for a bed-and-board divorce.

Because the legislature failed to enact a constitutionally sound sex-neutral bed-and-board provision, that portion of the divorce law remained inoperable. The 1980 Divorce Code has no provision for bed-and-board divorces, so a statutory decree of legal separation does not exist in Pennsylvania.[1]

Despite the fact that the foregoing suggests that legal separation is not recognized due to drafting difficulties, the court can infer that there are other reasons for not doing so. One of these reasons is that it is the policy of this commonwealth to preserve and protect the family whenever possible. See, *In re William L.,* 477 Pa. 322, 383 A.2d 1229 (1978). In recognition of the primacy and sanctity of the family, the Superior Court has said:

---

1. Wilder, J., et al., Pennsylvania Family Law Practice and Procedure Handbook, §3-1, pp. 15-6, The Harrison Co. 1986.

"A family is an institution which preceded governments. Its sanctity was universally recognized before judges or statutes or constitutions or welfare organizations were known to man." *In re Rinker,* 180 Pa. Super. 143, 147, 117 A.2d 780, 783 (1955).

The Divorce Code of 1980 revolutionized the law of divorce in Pennsylvania by introducing three remedial concepts: no-fault divorce, equitable distribution and alimony after divorce. The express purpose of the divorce law is remedial rather than punitive. *Gordon v. Gordon,* 293 Pa. Super. 491, 439 A.2d 683 (1981), aff'd, 498 Pa. 570, 449 A.2d 1379 (1982). The legislative intent is to mitigate the harm to parties and their children and to effectuate economic justice. 23 P.S. §102(a).

Indeed, a perusal of the legislative hearings concerning the adoption of these amendments to the Divorce Code reveals the intent to preserve the above-stated public policy by enacting counseling requirements. 23 P.S. §202.[2]

The public policy as stated, the intent of the Divorce Code and the availability of marital counseling by statute indicate to this court that the marital state is deemed to exist until the entry of a divorce decree despite that fact that the parties may be living separate and apart.

The argument that divorce should be the "qualifying event" under COBRA is bolstered by petitioner's citation to 23 Pa.C.S. §401(i). This recent amendment permits a court to direct the purchase

---

2. Rounick, Jack A., Pennsylvania Matrimonial Practice, Appendix B, Part 3, The Lawyers Co-Operative Publishing Co. 1987.

"Mr. Scirica: 'Mr. Speaker, this bill does not provide for divorce on demand. You just cannot walk into a courthouse and get a divorce, you cannot walk away from marriage. It specifies that . . . the party who does not consent has the option to get court-ordered counseling.'"

or continuation of or beneficiary designation on a policy insuring the life or health of either party.

The commentary under this recent amendment is as follows:

"The addition of health insurance to this selection was a Catholic Conference amendment. Its use in the first sentence of subsection (i) is not particularly significant, given the otherwise existing requirements to maintain health insurance for spouse and children under Act 66, 23 Pa.C.S. §4324. But its inclusion in the last sentence, entirely new, has potentially far-reaching effects. Prior to this amendment a non-employee spouse's health insurance benefits terminated on the entry of a decree and were only marginally protected thereafter (at the non-employee spouse's cost, albeit a reduced one and only for a limited time) under COBRA ... Under subsection (i)'s new language, the court will have the authority, inter alia, to require a spouse to purchase *post-divorce* health insurance for the other party. The term of such an order could exceed that required by COBRA." (emphasis supplied)

A reading of this commentary points to the author's belief that the non-employee spouse's health benefits should terminate only upon the entry of a divorce decree.

The court's research for Pennsylvania guidance led to a solitary article, appropriately entitled, *The Cobra Strikes at Group Health Insurance Plans: Divorced Women's Rights to Continued Coverage,* 92 Dickinson L.Rev. 253 (1987). In all instances when discussing a qualifying event, divorce, not "legal or physical separation," is cited as the qualifying event.

Indeed, the court's research indicates apparently only two other jurisdictions which have spoken to the issue. Pennsylvania is one of four jurisdictions

which does not have a legal separation procedure. The State of Minnesota, which does recognize a state of legal separation, recently construed a dissolution and property decree within the requirements of COBRA. Minn. Stat. §518.06. Legal Separation.

In *Bone v. Bone,* 438 N.W.2d 448 (Minn. App. 1989), the Court of Appeals of Minnesota was asked to construe the following paragraph with respect to COBRA:

" '(7) *Medical Insurance for [Appellant].* Respondent shall continue to provide health insurance coverage for [appellant] through his employer to the extent he is able to do so in accordance with the provisions of Minn. Stat. §62A.21, Subd. 2A and/or federal law commonly known as COBRA. This coverage shall be continued for a period of at least three years from the date of this decree or such longer time as Minn. Stat. §62A.21 and/or COBRA permits.'

"Of particular interest to this court is Minn. Stat. §62A.21 which provides in part:

" '*Conversion Priveleges for Insured Former Spouses and Children.*

" 'Subdivision 1. *No policy of . . .* health insurance *. . . shall contain a provision for termination* of coverage for a spouse covered under the policy *solely as a result of a break in the marital relationship.*

' "Subdivision 2A. Continuation privilege. Every policy described in subdivision 1 shall contain a provision which permits continuation of coverage under the policy for the insured's former spouse . . . upon entry of a valid decree of *dissolution of marriage.*' " *Id.* at 451. (emphasis supplied)

In *Bone, supra,* the Minnesota court did not find a state statutory termination event which applied to the appellant and therefore concluded that COBRA

would govern the parties' agreement to that effect. The court concluded as follows:

" '(3) Qualifying event — . . . the term "qualifying event" means . . .

" '(C) The divorce . . . of the covered employee from the employee's spouse.' 26 U.S.C. §162(k) (1986) (also known as COBRA) . . . This statute indicates that a spouse is entitled to coverage until a disqualifying event occurs. Then the spouse is entitled to additional continuation coverage; the length depends on the nature of the disqualifying event.

"In this case, appellant's disqualifying event is her divorce from respondent. She is therefore entitled to 36 months of continuation coverage. Following those 36 months, she has 30 days in which to obtain conversion coverage." *Id.* at 452.

The only other citation is found closer to home in the State of Maryland which recognizes legal separation on grounds of abandonment. Fam. Law Art. 7-103[E]; R.P. S72. In *Bricker v. Bricker,* 78 Md. App. 570, 544 A.2d 444 (1989), the Court of Special Appeals of Maryland discussed its statutory counterpart to COBRA.

"To achieve what it deemed a legitimate social policy, Congress enacted the Comprehensive Omnibus Budget Reconciliation Act (COBRA) of 1986, Pub.L. No. 99-272, 100 Stat. 82 (1986). Title X, §10001 of the act amended, inter alia, section 162 of the Internal Revenue Code of 1954 and provided that no trade or business deduction would be permitted for expenses of group health plans unless the plan incorporated a number of required provisions. It specifies that a group health plan cost is deductible 'only if each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled to elect, within the election period, continuation coverage under the

plan.' 26 U.S.C. §162(k)(1) (1988). 'The divorce or legal separation of the covered employee from the employee's spouse[,]' 26 U.S.C. §162(k)(3)(C), is one of the qualifying events which triggers the right to continued coverage for one 'who, on the day before the qualifying event for that employee, is a beneficiary under the plan . . . as the spouse of the covered employee.' 26 U.S.C. §162(k)(7)(B)(i)(I)." 544 A.2d at 451.

"We look next to Md. Code Ann. Art. 48, §490H (1957, 1986 Rep. Vol., 1988 Cum. Supp.)

### *"Article 48A, §490H"*

"The cost of medical care has skyrocketed in recent years. The problems attendant to pre-existing conditions, the expense of individual policies, and the particular need for continued coverage under group plans for involuntarily terminated employees, surviving spouses, dependent children and *divorced spouses* have become matters of major public importance. In response to these issues, the 1986 General Assembly of Maryland passed section 490G, H and I of Article 48A. Of significance to us is section 490H, which requires medical coverage in group contracts be made available for dependent children *and a divorced spouse* who have been covered for at least the 30-day period preceding the divorce." *Id.* at 450. (emphasis supplied)

On the basis of the foregoing arguments and authorities, this court is convinced that the "qualifying event" under COBRA should be defined as entry of a divorce decree in this commonwealth and shall so order.

A third issue for the court's consideration is petitioner's request for counsel fees on the basis that National Forge Company intentionally and in bad

faith unilaterally removed petitioner from its health care plan. Due to the lack of specific statutory or regulatory guidance on the issue, this court will deny the request as it finds that the company did not act in bad faith. However, this court urges strict future compliance with the notification of extension of coverage requirements of COBRA at 26 U.S.C. §162(k), et seq., upon the entry of a divorce decree. Similarly, petitioner shall promptly notify the company if and when the qualifying event of divorce occurs.

## ORDER

And now, July 13, 1989, upon consideration of petitioner's request for special relief and joinder of additional party, it is hereby ordered, adjudged and decreed as follows:

(1) The National Forge Company is joined as an additional party to this action;

(2) The National Forge Company shall reinstate the petitioner's medical care insurance retroactive to December 1, 1988 and shall continue said coverage until the entry of a divorce decree; and

(3) Petitioner's request for attorney's fees is denied.