Zeda SIMPSON, Plaintiff,

v.

T.D. WILLIAMSON, INC., a corporation, and Jeffery Simpson, Defendants.

No. 02–CV–682–J.

United States District Court, N.D. Oklahoma.

Nov. 3, 2003.

Jay C. Baker, Tulsa, OK, for Plaintiff.

J. Daniel Morgan, Jodi Fowler Jayne, Gable & Gotwals, James R. Gotwals, Mary Lou Gutierrez, James R Gotwals & Associates, Tulsa, OK, for Defendants.

Jeffery Simpson, Broken Arrow, OK, pro se.

## ***ORDER***

JOYNER, United States Magistrate Judge.

Before the Court is Motion for Summary Judgment filed on behalf of Defendant T.D. Williamson, Inc., ("TDW") and the Court finds the motion is denied for the reasons set forth herein.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment pursuant to Fed. R.Civ.P. 56 is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Windon Third Oil & Gas v. FDIC,* 805 F.2d 342 (10th Cir.1986). In *Celotex,* the court stated:

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 317, 106 S.Ct. 2548 (1986). To survive a motion for summary judgment, nonmovant "must establish that there is a genuine issue of material facts ..." Nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita v. Ze-*nith, 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence and inferences therefrom must be viewed in a light most favorable to the nonmoving party. *Conaway v. Smith,* 853 F.2d 789, 792 n. 4 (10th Cir.1988). Unless the Defendants can demonstrate their entitlement beyond a reasonable doubt, summary judgment must be denied. *Norton v. Liddel,* 620 F.2d 1375, 1381 (10th Cir.1980).

The Tenth Circuit Court of Appeals stated:

> Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." ... Factual disputes about immaterial matters are irrelevant to a summary judgment determination ... We view the evidence in a light most favorable to the nonmovant; however, it is not enough that the nonmovant's evidence be "merely colorable" or anything short of "significantly probative."
>
> .    .    .    .    .
>
> A movant is not required to provide evidence negating an opponent's claim ... [r]ather, the burden is on the nonmovant, who "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." ... After the nonmovant has had a full opportunity to conduct discovery, this burden falls on the nonmovant even though the evidence probably is in possession of the movant. (Citations omitted.)

*Committee for the First Amendment v. Campbell,* 962 F.2d 1517, 1521 (10th Cir. 1992).

### II. UNDISPUTED MATERIAL FACTS

The undisputed material facts for purposes of this motion, taken from the record

submitted by both parties on summary judgment, are as follows:

1. Jeffery Simpson, Plaintiff's former husband, was at all times material to the allegations, a full time employee of Defendant TDW.

2. Mr. Simpson enrolled in the family health care insurance coverage for himself and his dependents, which included Plaintiff.

3. Plaintiff and Mr. Simpson separated in early July 2000 and have since lived apart. Divorce proceedings were subsequently filed by Plaintiff in the District Court of Tulsa County, Oklahoma on July 12, 2000 and assigned Case No. FD–2000–2955.[1]

4. On July 10, 2000, the District Court of Tulsa County entered an "Emergency Protective Order" which was directed to Defendant Jeffery Simpson. The Order contained the following provisions:

"Defendant ordered to remain away from the victim [Mrs. Simpson] or victims and the residence of the victim where ever it may be at all times.

Defendant ordered to immediately leave the residence located at 1200 East Dover Street, B.A. [This is the marital residence of the Parties]." [2]

There was no provision regarding health insurance.

5. On July 24, 2000, the District Court of Tulsa County entered a "Continuing Emergency Protective Order" which contained the same prohibition against Mr. Simpson having any contact with Mrs. Simpson and ordered him again to remain away from the family residence.

6. On July 12, 2000, Mrs. Simpson's "Petition For Divorce and Application For Temporary Restraining Order" was filed in the District Court for Tulsa County. In that petition for divorce, Mrs. Simpson states:

"That a temporary order is needed giving Plaintiff possession of the marital residence at 1200 Dover Street, Broken Arrow, Oklahoma and excluding Defendant from the home."

7. On August 30, 2000, an additional Protective Order against Mr. Simpson was issued which contained the same prohibitions.

8. On October 27, 2000, an "Agreed Temporary Order" was entered in the Simpson divorce which awarded Mrs. Simpson the exclusive possession and use of the marital residence and stated:

"Defendant is restrained and prohibited from entering within or upon the residence of the Plaintiff or about any place she may be, as provided in a Protective Order previously issued."

In reference to health insurance, it further provided:

"Each party is restrained and prohibited from withdrawing from, altering, assigning and/or encumbering or otherwise dealing with any ... existing policy of insurance, whether such insurance be health ... and the policy/certificate owner should be required to maintain such insurance during the pendency of this action."

9. On February 28, 2002, TDW sent Plaintiff a letter advising her that TDW had become aware that a qualifying event had occurred and as a result, her medical coverage terminated as of January 31, 2002. The letter then advised her of her right to continue coverage under COBRA and provided election forms.

---

1. TDW's statement lists the year as 2002 and Plaintiff did not dispute this fact, However, the assigned case number indicates it should be 2000.

2. TDW's statement lists the date as July 10, 2002 and Plaintiff did not dispute this fact, However, the exhibit sponsoring same indicates the correct year is 2000.

10. On March 8, 2002, Plaintiff filed application to add TDW to the divorce action, followed by a corrected application for same filed on April 11, 2002.

11. On April 25, 2002, TDW sent a letter to counsel for Plaintiff, which reiterated the company position that a qualifying event had occurred and offered to settle the matter in order to avoid being made a party to the divorce action by allowing one of the parties to submit an election to continue coverage under COBRA. The letter stated that if such an election was not made, coverage would lapse and there was nothing more TDW would be able to do. The letter concluded by requesting the hearing be stricken on the application to add TDW to the divorce action.

12. Mrs. Simpson submitted the COBRA application form on April 29, 2002, the deadline stated in TDW's letter. Plaintiff asserts she was coerced by TDW and that there was no qualifying event.

13. On May 2, 2002, TDW sent Mrs. Simpson a letter which stated that her COBRA rights were being accepted and that her coverage dates would be retroactive to February 1, 2002. It also stated that the monthly premium due was $294.43, that monthly premiums were considered due by the 15th of the month preceding the month of coverage and that if payment was not received in the prescribed time, coverage would be terminated retroactively to the last month paid and could not be reinstated.

14. On May 3, 2002, TDW sent a letter to counsel for both parties to the divorce advising of receipt of the COBRA election and stating Plaintiff would be liable for the premium payments. The letter further states TDW's assumption that the motion hearing on the application to add TDW as a party "will be stricken" based upon the matter being resolved and requests counsel contact TDW if this assumption is not correct. Plaintiff states she did not receive the letter but there is nothing in the record to refute that it was received by her attorney acting as her agent.

15. On May 7, 2002, TDW sent Plaintiff a medical ID card and claim form.

16. On June 7, 2002, TDW sent an e-mail to Mr. Simpson advising Plaintiff's premiums must be paid by June 10 or coverage would be terminated retroactively to February 1 and could not be reinstated. There is no indication the notice was also sent to Mrs. Simpson.

17. On June 18,2002, TDW sent Plaintiff a letter advising her insurance had been canceled for nonpayment of premiums. It is undisputed that Plaintiff did not make payments to TDW to continue the coverage.

18. The final Decree of Divorce was entered on September 13, 2002. In her deposition, Plaintiff testified that from the time the Protective Order was entered until the finalization of the divorce, she lived separately from Jeff Simpson.

19. When the divorce was final, Plaintiff sent a letter to TDW electing COBRA coverage to which no response was received.

## III. ARGUMENTS AND AUTHORITY

### A. QUALIFYING EVENT ISSUE

The first issue to be addressed is whether TDW was entitled to initiate the COBRA continuation of benefits process upon entry of a temporary order in a divorce. TDW asserts it was entitled to issue notification at the point in time it became aware that the parties were living apart under temporary court orders which prevented Mr. Simpson from returning to the marital home. TDW urges this constituted a "qualifying event" because it is a "legal separation."

The Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.*, was enacted to provide employees who had been covered by employment-related group health care plan with an opportunity to elect continuation of coverage in the event of some "qualifying event." *Hubicki v. Amtrak Nat. Passenger R. Co.*, 808 F.Supp. 192 (E.D.N.Y. 1992).

■ TDW acknowledges that COBRA lists "legal separation" as a qualifying event. COBRA does not define "legal separation" and no Oklahoma courts have addressed the issue. TDW asserts the court orders requiring the parties to live apart following the filing of the divorce action compels this Court to conclude this situation is a "legal separation" intended to trigger notification. This Court does not agree.

The Court acknowledges that the parties were living separately pursuant to the terms of several temporary court orders. A literal interpretation of the language would conclude that this is a "legal separation." However, a closer look at the language of those temporary orders and the policy behind COBRA compels a different result.

The temporary order states:

"Each party is restrained and prohibited from withdrawing from, altering, assigning and/or encumbering or otherwise dealing with any ... existing policy of insurance, whether such insurance be health ... and the policy/certificate owner should be required to maintain such insurance during the pendency of this action."

It would be a useless act to require the maintenance of insurance if the separation of the parties and the filing of a divorce

would under COBRA terminate all insurance 90 days hence. This is especially true in light of Okla.Stat.tit. 43 § 107.1 which forbids the granting of a divorce for 90 days following the filing when there are minor children. This would mean that, in every case where there are children, medical insurance under plans covered by COBRA would terminate because of the qualifying event before the court could determine who is to pay the premiums. It would render meaningless the provisions of the automatic injunction mandating the continuance of insurance coverage while the divorce is pending.

*Riggle v. Riggle*, 3 Pa. D. & C.4th 358, 1989 Pa.D & C LEXIS 304 (1987), supports this Court's conclusion. In *Riggle*, the parties filed for divorce and an agreed order of support was entered providing plaintiff/husband was to provide health care coverage for defendant/wife. During the pendency of the divorce, defendant/wife required medical services and learned her medical coverage had been cancelled without notice to either party.

The medical policy of the plaintiff's company contained a provision under which coverage for dependants was terminated if the parties became "legally separated" as in the case at bar. The plan also contained a provision for continued coverage under COBRA. Pennsylvania did not recognize a state of legal separation, although it had historically allowed such a cause of action for women only, which did not pass constitutional scrutiny.[3]

Defendant moved to add plaintiff's employer as a party to the divorce action, which the Court allowed, finding the company's insurance policy interfered with a property right, giving the court jurisdiction under its equitable power. The court

---

**3.** The state legislature did not pass legislation correcting the infirmity but simply allowed    the cause of action to fade into history.

also found failure to join the company and resolve the issue would result in an unnecessary waste of the court's time and the parties' resources.

The Riggle court found: "On the basis of the forgoing arguments and authorities, this court is convinced that the 'qualifying event' under COBRA should be defined as entry of a divorce decree in this commonwealth and shall so order" and not the separation. The court held the company could not cancel the insurance until entry of a decree of divorce and ordered coverage reinstated, finding the marital state is deemed to exist even though the parties are living separate and apart. The holding was based on the public policy of the state to preserve and protect the family, the remedial (as opposed to punitive) provisions of the Pennsylvania divorce code, and the availability of divorce counseling by statute.

The Court finds the analysis employed by the Pennsylvania court in *Riggle* to be well reasoned and persuasive.[4] As in *Riggle,* public policy provides direction for resolving this dispute. The Court finds there are two such policies which compel this Court to find "legal separation" does not occur until a final court order dissolving the previous marital relationship. The first is the public policy encouraging the preservation and protection of marriage and family relationships. The second is the core purpose of COBRA, which is to insure continued medical coverage be available to workers and their families who face changes in their lives.

Oklahoma statutes encourage reconciliation of marriage even after a decree is entered. Okla. Stat. tit. 43 § 127 (2000), prohibits remarriage to another party until six (6) months after the entry of the decree. Section 133 of the same statute allows parties to a final divorce to set the decree aside upon petition signed by both parties at any future time so long as neither party has married a third party. The Court takes judicial notice that spouses involved in divorces more bitter than that between the Simpsons reconcile before or after a divorce is finalized. All parties are protected if the "qualifying event" triggering notification is the final, appealable order in divorce proceedings.

Plaintiff correctly points out that Oklahoma has recently amended its statutes to institute an automatic injunction when an action is filed for divorce or legal separation,[5] ordering the parties to maintain all presently existing health insurance, among other issues. Okla. Stat. tit. 43 § 110. The Court notes the statute is entitled "Automatic temporary injunction—Temporary orders." The terminology itself implies transitory relief, not intended to be permanent. Read in conjunction with Okla. Stat. tit. 43 § 107.1, which prohibits the granting of a divorce for a period of 90 days where minor children are involved and Oklahoma's recent trends to provide counseling to children of divorce and the par-

---

4. *Riggle* presents a cogent argument why this matter should have been determined in the state court, particularly where Mr. Simpson was in violation of the temporary order entered therein.

5. Plaintiff states Oklahoma now provides a definition for "legal separation." Okla. Stat. tit. 43 § 105, amended November 1, 2002, establishes a proceeding for "legal separation" but does not define same, nor do the other statutes referenced by Plaintiff. The

term appears to be a substitution for the previous statutory action of "separate maintenance." Historically, Oklahoma courts and statutes have used the terms interchangeably. See *Matter of Estate of Allen,* 738 P.2d 142 (Okla.1987), *Callison v. Callison,* 687 P.2d 106 (Okla.1984). In any event, there is no reason to treat a proceeding brought as a legal separation different from one brought for divorce and the final order granting the relief sought would trigger COBRA notification.

ties themselves, it is incomprehensible that employers could use the procedures carefully designed to orchestrate a smooth transition for families in crisis to potentially cut off affordable health care before a divorce decree can legally be entered.[6]

### B. ACCORD AND SATISFACTION

TDW asserts there was an accord and satisfaction reached between TDW and Plaintiff concerning the issue of "legal separation" and when it triggers COBRA notification and coverage. TDW urges that the election made by Plaintiff following the filing of the motion to add TDW as a party to the divorce action constituted a settlement and Plaintiff is now precluded from relitigating the issue.

■ The evidence is inconclusive as to whether a compromise and settlement was reached. If, in fact, Plaintiff's attorney reached an agreement with TDW but failed to advise the court or his client of that agreement, it may nevertheless be a binding agreement. On this the record is silent. The only evidence that there was an agreement to drop the attempt to add TDW to the divorce proceeding is found in the letter written by TDW counsel memorializing a telephone conversation to that effect. In light of the fact Plaintiff's affidavit refutes this and the Tulsa County court records do not reflect that the motion was withdrawn, this remains an issue of fact. The Court record establishes TDW was not dropped from the lawsuit but does not establish why, or even if, the hearing referenced in TDW's counsel's letter was stricken.

Further, there is a fact question regarding the terms of the settlement, if there was a binding agreement. Plaintiff's position is that Mr. Simpson was to pay the insurance premiums. The letter from

TDW's counsel does not specifically address who is responsible for paying the premiums, if, as occurred in this case, Mrs. Simpson submitted an election. It simply indicates that if she does not make the election, her coverage will lapse "unless Mr. Simpson elects to have his spouse covered," in which case it goes on to state the premium will be deducted from his paycheck. A logical reading of this would indicate that if she makes the election, she pays and if he does, he pays. However, it could be read to create an ambiguity as to responsibility for payment. Because it is drafted by TDW, any ambiguity is construed against the drafter. In view of there being an agreed temporary order filed October 27, 2000, in which Mr. Simpson agreed to maintain health (and other) insurance during the pendency of the action, it is not unreasonable for Mrs. Simpson to assume he would make the payments upon her election. The Court further notes that only Mr. Simpson was notified by e-mail that the payments had not been made and that the policy would lapse. TDW had the address of counsel for Plaintiff and Plaintiff herself but the record now before the Court indicates TDW did not notify her directly until it was too late for the payments to be made. Taking the evidence in the light most favorable to Plaintiff, the Court cannot conclude an accord and satisfaction was reached between the parties and evidence of that must be presented to a jury. The motion for summary judgment is denied on that issue.

### III. CONCLUSION

For the reasons stated above the Court finds that the "qualifying event" in this case is the final decree of divorce and not

---

6. While employers may argue continuation of benefits is available upon COBRA notification, the cost of that coverage is often a signif- icant increase, making it effectively unavailable.

the parties' separation. Although Plaintiff did not move for summary judgment, summary judgment must be rendered in favor of Plaintiff on this issue of what constitutes a "qualifying event" in this case. *Dickeson v. Quarberg,* 844 F.2d 1435, 1444 n. 8 (10th Cir.1988).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant's Motion for Summary Judgment is denied. Summary judgment is granted to Plaintiff on the issue of the decree of divorce and not the parties' separation constituting the "qualifying event" entitling her to COBRA notification as of that date.